289 So.2d 123 (1974)
STATE of Louisiana
v.
Emanuel DAVIS.
No. 53935.
Supreme Court of Louisiana.
January 14, 1974.
Concurring Opinion January 31, 1974.
Rehearing Denied February 15, 1974.
*124 Bernard J. Usprich, Orleans Indigent Defender Program, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was tried under a bill of information charging him with armed robbery. R.S. 14.64. He was convicted after a trial by jury and was sentenced under the habitual offender statute to ninety-nine years at hard labor. Defendant appeals, relying on four bills of exceptions.
The facts as disclosed by the record are as follows:
On April 29, 1968 at approximately 12:15 a. m., the night manager of the Roslyn Hotel, 629 Carondelet Street, New Orleans, was robbed at gun point of his watch by two black men who fled the scene on a bicycle. The men on the bicycle were pursued by two taxicabs. During the chase the cab drivers broadcast their position and a general description of the bandits. The police picked up the broadcasts and converged upon the area. As the police turned onto Clio Street near Carondelet they observed a bicycle sliding down the street and a man crawling underneath a parked car. The man was pulled from underneath the car and was searched. The victim's watch was found in his pocket. Approximately ten minutes elapsed between the robbery and the time the defendant was apprehended.

Bills of Exceptions Nos. 1 and 2
The bills pertain to the denial of a motion to suppress and the admission of the *125 watch seized from the defendant at the time of his apprehension by the police. Defendant argues that the arrest was made without probable cause thus making the arrest illegal and rendering inadmissible evidence seized as a result of any search incidental to that arrest. State v. DiBartolo, 276 So.2d 291 (La.1973).
Article 213 of the Code of Criminal Procedure provides in pertinent part:
"A peace officer may, without a warrant, arrest a person when:
. . . . . .
"(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense although not in the presence of the officer; ...."
As we said recently in State v. Warren, 283 So.2d 740, 743 (La.1973), citing State v. Johnson, 249 La. 950, 192 So.2d 135 (1966):
"Reasonable beliefor `probable cause' as it is termed under the federal standardto make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a felony has been or is being committed. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Aias, 243 La. 945, 149 So.2d 400 (1963); State v. Calascione, 243 La. 993, 149 So.2d 417 (1963).
"Compliance with these standards is, in the first instance, a substantive determination to be made by the trial court from the facts and circumstances of the case. Ker v. State of California, 374 U. S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. McIlvaine, 247 La. 747, 174 So.2d 515 (1965).
"And in determining compliance with these standards it is not the proof required for conviction which concerns us. Proof required to satisfy the requirement of reasonable belief or probable cause is less and is what the terms imply: probabilities and practical considerations of everyday life on which reasonable men could reasonably be expected to act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Bourg, 248 La. 844, 182 So.2d 510 (1966)."
Probable cause requires more than mere suspicion but requires less than evidence sufficient to convict. State v. Wood, 262 La. 259, 263 So.2d 28 (1972).
In the present case, the fact that the person arrested had apparently been riding a bicycle, as had the robbers, that he fit the general description of one of the robbers, that he was apprehended near the place of the crime some ten minutes after it was committed and that he was apparently attempting to hide under a parked car, support a finding that reasonable belief or probable cause existed to arrest the defendant. As such a search of his person incidental to that arrest was proper. Cf. State v. DiBartolo, supra.
These bills are without merit.

Bill of Exceptions No. 3
This bill was reserved when the trial court overruled defense counsel's objection to the introduction of a brown hat and a bicycle into evidence. Defendant argues that the items were improperly admitted since no relationship was shown between them and the defendant.
The hat, which was found some two blocks from where the defendant was arrested, was identified by the victim as being similar to that worn by the defendant during the robbery. The bicycle, which was in the street approximately *126 twenty feet from the car under which the defendant was hiding, was identified by the two taxi drivers as being similar to the one ridden by the robbers. In addition, the arresting officer testified that the bicycle was the one found near the defendant.
As we said in State v. Isaac, 261 La. 487, 260 So.2d 302, 306 (1972):
"Before the admission of an object in evidence, a foundation must be laid showing that it is related to the case. The foundation testimony may consist of visual identification of the object by witnesses or by establishing a continuous chain of custody from the seizure of the object to its introduction in evidence at the trial. For admission, it suffices if the testimony establishes that it is more probable than not that the object is connected with the case. A preponderance of the evidence is sufficient. ..."
We find the foundation laid by the State with regard to both objects was sufficient to establish the requisite relationship.
This bill is without merit.

Bill of Exceptions No. 4
This bill was reserved when the trial court overruled defendant's objection to a question posed to the defendant while he was under cross-examination.
On direct examination defense counsel had posed the following questions to the defendant:
"Q. You are on parole from a charge of manslaughter on which you served some time in Angola, isn't that right?
"A. Yes sir.
"Q. You pleaded guilty to that charge, didn't you?
"A. Yes sir, I pleaded guilty to manslaughter.
"Q. Because you were guilty?
"A. Yes sir.
"BY MR. WIMBERLY:
"I object, Your Honor, to counsel leading the witness.
"BY THE COURT:
"Objection sustained.
"BY MR. PERSCHALL:
"Q. Why didn't you plead guilty to this charge?
"A. Because I don't know anything about this charge.
"Q. Have you ever been convicted of anything else except the manslaughter chargeany theft or robbery or anything?
"A. No sir.
"BY MR. PERSCHALL:
"That is all."
Then, on cross-examination, the district attorney made the following inquiries:
"BY MR. WIMBERLY:
"Q. Davis, you said you pleaded guilty to manslaughter. Wasn't it because the original charge was murder, and carried a greater penalty?
"BY MR. PERSCHALL:
"I object, all he can ask is what he was convicted of.
"BY MR. WIMBERLY:
"This is true, Your Honor, but counsel opened the door.
"BY THE COURT:
"Your objection is overruled. You opened the door, Mr. Perschall. He is under cross examination.
"BY MR. PERSCHALL:
"To which ruling of the Court, we respectfully reserve a bill of exceptions, making the question, my objection and the ruling of the Court part of said bill.

*127 "BY THE COURT:
"Let the bill be reserved.
"BY MR. WIMBERLY:
"Q. Wasn't the original charge murder, and you pleaded to manslaughter because you were going to get a lighter sentence?
"BY MR. PERSCHALL:
"I object, Your Honor.
"BY THE COURT:
"Objection overruled."
R.S. 15:462 permits a cross-examination of a defendant who takes the stand in the same manner and scope as any other witness. R.S. 15:495 provides:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein." (Emphasis added).
Under this provision, only the fact of conviction is admissible and not the details of the prior offenses. State v. Kelly, 271 So.2d 870 (La.1973); State v. Brent, 248 La. 1072, 184 So.2d 14 (1966). Included within the prohibition against cross-examination on an indictment or information are inquiries concerning the indictment under which the witness was convicted. State v. Hayes, 262 La. 674, 264 So.2d 603 (1972).
Here the defense attempted to make the familiar point before the jurythat "every time I've been guilty before, I pleaded guiltythis time I'm not guilty." The State argues that it has the right, in attacking defendant's credibility, to show that his motive for pleading guilty to the prior offense was not a dedication to truth, but to escape a more serious charge. The argument is plausible, but not so plausible as the prohibition of R.S. 15:495. In addition to other sound reasons for prohibiting cross-examination of prior indictments, a strict interpretation of R.S. 15:495 will prevent a diversionary contest on a collateral issue, for it is logical to expect a defendant to then attempt to prove that he really was not guilty of the greater offense charged (which included the lesser offense to which he pleaded guilty).
Although the trial court was in error in permitting questions concerning the former indictment, it is clear from the record [1] that it had no significant bearing on the outcome of the case, and we will not reverse for this error.
For these reasons, the conviction and sentence are affirmed.
SUMMERS, J., concurs in the decree and assigns reasons.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
The majority have found error under Bill of Exceptions No. 4. When the defendant took the stand, his counsel used the usual and accepted tactic when a defendant has a prior conviction. Since convictions may be used to impeach a witness, including the defendant, the better practice is for the defendant who takes the stand to openly admit his convictions rather than having them presented to the jury by the State on cross-examination. If the defendant *128 fails to voluntarily admit the convictions, the "uncovering" of the convictions by the State on cross-examination tends to convince the jury that the defendant is less credible because of his attempt at concealment. The State's presentment of prior convictions has a greater impeachment impact than the defendant's admission on direct examination.
Here, after the defendant admitted a conviction for manslaughter, the State was permitted to interrogate him in regard to the original indictment. The State presented to the jury the fact that although the defendant was convicted of manslaughter he was indicted for murder. R.S. 15:495 prohibits evidence concerning an indictment for a crime as it permits evidence concerning conviction of a crime. While the majority have admitted the State's interrogation to be error, they state it is not reversible error because "* * * it is clear from the record that it [questions relating to indictment] had no significant bearing on the outcome of the case, * * *" The record in this case as shown by the majority opinion consists of two bills of exceptions dealing with a pretrial motion to suppress, one bill of exceptions which concerns the admissibility of physical evidence and the present bill of exceptions. On that record, I am unable to determine what effect the error committed under the last bill had upon the outcome of the case. Perhaps the majority have read more than the record consisting of these bills. Perhaps they have read the full transcript of the proceedings in the trial court and have evaluated the evidence of guilt or innocence and determined the defendant's guilt was established regardless of the error committed.
I have repeatedly stated that we can not apply the federal harmless error rule in proceedings in Louisiana as long as bills of exceptions are required and the record is limited. See dissents in State v. Hopper, 253 La. 439, 218 So.2d 551 (1969), State v. Anderson, 254 La. 1107, 229 So.2d 329 (1970), and State v. Hills, 259 La. 436, 250 So.2d 394 (1971). See also concurring opinions in State v. McGregor, 257 La. 956, 244 So.2d 846 (1971) and State v. Mixon, 258 La. 835, 248 So.2d 307 (1971). C.Cr.P. Arts. 920 and 921 set forth the scope of our review and the matters which are not grounds for reversal. Articles 920 and 921 provide as follows:
"Art. 920. Scope of appellate review
The following matters and no others shall be considered on appeal:
(1) Formal bills of exceptions that have been submitted to and signed by the trial court in accordance with Article 845, whether or not the bills of exceptions were made a ground for a motion for a new trial; and
(2) Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
"Art. 921. Matters not grounds for reversal
A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."
The record referred to in Article 921 is the record which is defined by Article 920. Moreover, Article 921 requires a reversal when the error complained of constitutes a substantial violation of a statutory right. The court here committed a substantial, direct and complete violation of the statutory right granted under R.S. 15:495.
I respectfully dissent.
*129 SUMMERS, Justice (concurring).
I do not agree that the trial court was in error by permitting questions concerning the former indictment under the facts of this case. The ruling is, moreover, contrary to the jurisprudence of this State. See State v. Polk, 258 La. 738, 247 So.2d 853 (1971); State v. Richardson, 258 La. 62, 245 So.2d 357 (1971); State v. Williams, 250 La. 64, 193 So.2d 787 (1967).
It is correct to say that for the purpose of impeachment the prosecutor may generally refer only to evidence of conviction and may not question the accused concerning the background of the charge relied upon to impeach. Under the circumstances of this case, however, it was not error to bring out that the original charge was murder and the guilty plea was to the lesser crime of manslaughter.
The defense opened the door to the cross-examination complained of when on direct examination the accused testified to his motive in entering the guilty plea to manslaughter.
When a witness has been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case. (La.R.S. 15:280).
A great latitude on cross-examination is contemplated by the foregoing statute. This permits a defendant to be cross-examined on all matters brought out in his direct examination, and it is no objection that his answers may affect his credibility and character. And mere doubts as to the propriety or the extent of cross-examination are always resolved in favor of the cross-examination. State v. Richardson, supra.
Since the conviction and sentence were affirmed, however, I will concur in the result reached.
NOTES
[1] The record before us contains all the testimony adduced at the trial.