298 So.2d 781 (1974)
STATE of Louisiana
v.
Luther James BRADFORD and Robert Hayward Blumberg.
No. 52801.
Supreme Court of Louisiana.
June 10, 1974.
Concurring Opinion July 3, 1974.
Rehearing Denied August 30, 1974.
*784 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
M. Hampton Carver, Pres Kabacoff, Dean A. Andrews, Jr., Michael F. Barry, New Orleans, for defendants-appellants.
DIXON, Justice.
The defendants were tried under a bill of information charging them with armed robbery. R.S. 14:64. They were convicted after a trial by jury, and Bradford was sentenced to serve sixty years at hard labor while Blumberg received a sentence of twenty years at hard labor.
During mid-summer of 1970 the defendants in this case agreed to sell a quantity of stolen money orders to Claude Blanc, the complaining witness in the present case, and one Ronald Cavalier. The purchasers tricked the defendants, exchanging only a few dollars and some paper in a bag for the money orders instead of the agreed amount of $2300.00.
On September 20, 1970 at approximately 6:50 p. m. two men, subsequently identified as the defendants, entered the La Cantina Bar in New Orleans and persuaded the owner, Claude Blanc, to accompany them to his living quarters in the rear of the establishment where they beat him with fists and a pistol and robbed him of money and two watches.
The police were called immediately after the men left. A detailed description of the men, their clothing and the car they were driving was furnished and broadcast over the police radio. At approximately 7:30 p. m. a police car spotted a car matching the description of the one used in the robbery parked in the 800 block of Camp Street. *785 A man standing near the car fit the description of one of the robbers. After stopping, the police noticed another man inside a store near the car who fit the description of the other robber. After ascertaining that the men were together, had only been there for a short period, ten minutes, and that one of them owned the car, they were placed under arrest. The officers then called in and were told to stand by and wait for witnesses who were being brought to the scene of the arrest. After arriving the two witnesses identified the defendants as the men who had perpetrated the robbery. The defendants were searched and two watches were recovered from the person of Bradford. In addition, a pistol was recovered from inside the car. The police then transported the defendants to the scene of the crime where another witness identified them.
At trial the defendants denied committing the robbery and relied on an alibi defense.
The defense urges that an error patent on the face of the record exists in that the defendants were convicted by less than unanimous verdicts and such verdicts in light of the severity of the penalty for armed robbery constitutes denial of equal protection of the law.
Our review of the record establishes that the jury was polled concerning the verdicts, thus the basis of defendants' contention is discoverable by a mere inspection of the pleadings and proceedings and is properly subject to review. C.Cr.P. 920(2). See State v. Luquette, 275 So.2d 396 (La.1973).
The defendants argue that after Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), armed robbery was, in Louisiana, as grave an offense as those termed capital, which is evidenced by the fact the possible punishment is as severe as that which could have been imposed for a capital crime. This, it is argued, destroys the rational purpose for distinguishing between armed robbery and capital crimes with regard to the number of jurors required to convict.
In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972), the United States Supreme Court upheld a conviction in an armed robbery case returned by a less than unanimous jury stating:
"We conclude, however, that the Louisiana statutory scheme serves a rational purpose and is not subject to constitutional challenge.
"In order to `facilitate, expedite, and reduce expense in the administration of criminal justice,' State v. Lewis, 129 La. 800, 804, 56 So. 893, 894 (1911), Louisiana has permitted less serious crimes to be tried by five jurors with unanimous verdicts, more serious crimes have required the assent of nine of 12 jurors, and for the most serious crimes a unanimous verdict of 12 jurors is stipulated. In appellant's case, nine jurors rather than five or 12 were required for a verdict. We discern nothing invidious in this classification.
"To obtain a conviction in any of the categories under Louisiana law, the State must prove guilt beyond reasonable doubt, but the number of jurors who must be so convinced increases with the seriousness of the crime and the severity of the punishment that may be imposed. We perceive nothing unconstitutional or invidiously discriminatory, however, in a State's insisting that its burden of proof be carried with more jurors where more serious crimes or more severe punishments are at issue.
"Appellant nevertheless insists that dispensing with unanimity in his case disadvantaged him as compared with those who commit less serious or capital crimes. With respect to the latter, he is correct; the State does make conviction more difficult by requiring the assent of all 12 jurors. Appellant might well have been ultimately acquitted had he committed a capital offense. But as we have *786 indicated, this does not constitute a denial of equal protection of the law; the State may treat capital offenders differently without violating the constitutional rights of those charged with lesser crimes."
Defendants take comfort in the language of Johnson v. Louisiana, supra, by which the United States Supreme Court dismissed a contention of invidious discrimination because "the number of jurors who must be so convinced increases with the seriousness of the crime and the severity of the punishment ..." In the same discussion, however, Justice White referred to unanimous verdicts required in five man jury casescases considered to be of less serious nature than those tried by twelve man juries. The opinion noted that the defendant might have been ultimately acquitted if a unanimous verdict had been required (he also might have been convicted, upon longer deliberation), but that this was not a denial of equal protection of the law. "... the State may treat capital offenders differently without violating the constitutional rights of those charged with lesser crimes." Johnson v. Louisiana, 406 U.S. 356, 364, 92 S.Ct. 1620, 1626, 32 L.Ed.2d 152.
We may conclude, as defendants argue, that it was easier for the State to convict them of this offense, for which the punishment was more severe than the punishment for a "capital" offense, than it would have been to convict them of a "capital" offense, because of the requirement of jury unanimity. This resulted, not from a legislative scheme which had no reasonable basis for the different treatment of offenses, but from the judicial action overturning the death penalty in Furman v. Georgia, supra. Defendants were treated like all those charged with armed robbery. The classification of robbers, with other non-capital felons, is not invidious. The law of Louisiana, constitutional and legislative, which directs that non-capital felony trials be different from others may be unwise, but not unconstitutional as violative of the equal protection clause.
Bill of Exceptions No. 1
This bill pertains to the trial court's denial of defendants' motion to quash the bill of information. The motion was grounded on allegations that the penalty for armed robbery constituted cruel and unusual punishment and the crime must be charged by indictment since the possible length of imprisonment without benefit of parole, probation or suspension of sentence rendered it a capital offense for all practical purposes.
In State v. Holmes, 263 La. 685, 269 So.2d 207 (1972), we held that the legislature had placed in a class those offenses formerly punishable by death. See State v. Washington, 294 So.2d 793, decided April 29, 1974. Regardless of the serious nature of the imprisonment imposed for armed robbery, it is not "capital." In Louisiana prosecution must be by indictment only in "capital" cases. C.Cr.P. 382; Art. I, § 9, Louisiana Constitution.
Nor do we find merit in defendants' contention that a sentence under the armed robbery statute constitutes cruel and unusual punishment. In State v. Howard, 262 La. 270, 263 So.2d 32 (1972), we said:
"There is no constitutional infirmity in such penalty provision for the crime of armed robbery. Imprisonment itself is clearly not `cruel and unusual punishment,' reprobated by constitutional provision. See State v. Crook, 253 La. 961, 221 So.2d 473; State v. Dell, 258 La. 1024, 249 So.2d 118; State v. White, 254 La. 389, 223 So.2d 843; State v. Bellam, 225 La. 445, 73 So.2d 311. Mere length of sentence is not cruel and unusual punishment; most criminal systems provide for life terms."
This bill is without merit.
*787 Bill of Exceptions No. 2
This bill was reserved when the trial court at hearing on a motion to suppress refused to allow defense counsel to pursue a line of questioning of the arresting officer as to the events which transpired after the defendants were transported to central lockup and turned over to the station booking officer. The objection was that defense counsel was "fishing." The arresting officer had previously testified that he had no knowledge of what happened to the defendants once he had delivered them to the booking officer, the subject of the inquiry. Obviously, the officer could not testify as to facts beyond his knowledge. R.S. 15:463; see also R.S. 15:275.
This bill therefore lacks merit.
Bill of Exceptions No. 3
This bill relates to a ruling by the trial court, at the hearing on the motion to suppress, sustaining an objection by the State to testimony about to be given by a witness. The objection came when the witness said, "Mr. Blumberg stated that..."
The circumstances under which inculpatory statements or confessions were gained are properly the subject of inquiry on a motion to suppress and failure to allow such questioning is error. However, the defendants were not prejudiced by the ruling of the trial court. Neither inculpatory statements nor confessions were attributed to the defendants or introduced at trial.
This bill is without merit.
Bills of Exceptions Nos. 4 and 16
This bills pertain to denial of the motion to suppress the identification of the defendants and physical evidence seized from their persons and automobile and objections made to the subsequent introduction of that evidence at trial.
We find that the police had reasonable or probable cause to arrest the defendants. They and their automobile matched the rather detailed descriptions provided to the authorities. The men admitted they had been at the location on Camp Street only a few minutes, and refused to account for their earlier whereabouts. The robbery had occurred approximately one-half hour before the men were spotted some fifteen blocks away. Such circumstances were sufficient to justify a police officer of reasonable prudence in believing that the suspects were the likely perpetrators of the offense. See, C.Cr.P. 213(3); State v. Davis, 289 So.2d 123 (La.1974); State v. Warren, 283 So.2d 740 (La.1973); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966). As such a search of the defendants' persons incidental to that arrest was proper. State v. Davis, supra. Thus, evidence concerning the seizure of the watches and currency from the defendants was properly admitted.
The pistol and documents which were later introduced in evidence were seized from the glove compartment of the defendants' vehicle. The evidence indicates that the defendants were standing alongside the automobile after their arrest. A warrantless search may be properly made of the area within the immediate control of a person lawfully arrested from which he might gain possession of a weapon or destructible evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search of the unlocked glove compartment was reasonable in light of the proximity of the accused to the automobile and the fact the police had reasonable cause to believe they were dealing with persons who had committed an armed robbery.
The defendants also complain of the failure to suppress the field identifications made by eyewitnesses.
*788 In State v. Newman, 283 So.2d 756 (La. 1973), we said:
"Exceptions are recognized to the general prohibition against one-on-one identification procedures. Stovall v. Denno, supra [388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199]. One exception permits a one-on-one confrontation between an accused in custody and a witness where the accused is apprehended within a relatively short time and is returned to the scene of the crime for on the spot identification."
We find that the on-the-scene identifications in the instant case fit within the exception, and were properly admitted at trial.
These bills are without merit.
Bills of Exceptions Nos. 5, 6, 7 and 8
These bills relate to rulings of the trial judge at the hearing on defendants' motion to reduce bail and to the ruling denying a reduction in bail.
We need not consider the merits of these bills. The subsequent proceedings, trial, conviction and sentencing, have rendered them moot. Timely invocation of the supervisory jurisdiction of this court would have been the appropriate method to seek review of rulings on motions to reduce bail. See C.Cr.P. 322.
Bill of Exceptions No. 9
This bill was reserved when the trial court overruled defendants' objection to the sharing of a jury venire between two sections of the court. The argument is that by sharing the venire the accused persons would be denied a jury representing a cross-section of the community.
No such showing is made. The procedure employed by the trial court was not contemplated by C.Cr.P. 418; however, absent a showing of prejudice the mere failure to comply with C.Cr.P. 418 with regard to the number of prospective jurors available does not constitute reversible error. See C.Cr.P. 419; Cf. State v. Stephenson, 291 So.2d 767 (La.1974). The method of employing the venire was not arbitrary. Two judges of the criminal court had ordered the jury commission to draw one venire to be used by Sections B and D, because the commissions were "running out of names for the (jury) wheel." Compare the procedure outlined by C.Cr.P. 785, which contemplates the sharing of a petit jury venire in certain instances. C.Cr.P. 419 provides:
"A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant.
"This article does not affect the right to challenge for cause, a juror who is not qualified to serve."
This bill is without merit.
Bill of Exceptions No. 10
This bill was reserved when the trial court overruled defense counsel's objection to the district attorney reading the definition of armed robbery to the jury on voir dire. The basis of the objection is not clear. The ruling was correct. The prosecutor is obligated to explain the nature of the charge against defendants, and it was proper for him to read the statute to the jury. See State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972). Furthermore, the prosecutor did not pursue the reading.
This bill is without merit.
Bills of Exceptions Nos. 11 and 13
Bill of Exceptions No. 11 was reserved when the trial court refused to permit defense counsel to ask prospective jurors how recently they had served on a criminal jury. Bill 13 was taken when the trial judge refused to permit questioning of a prospective juror concerning the type of case involved in his prior criminal jury *789 service. The defendants contend that this curtailment of voir dire deprived them of the opportunity to exercise their peremptory challenges intelligently. See State v. Hills, 241 La. 345, 129 So.2d 12 (1961).
In the recent case of State v. Roquemore, 292 So.2d 204 (La.1974), we said:
"The purpose of voir dire examination is to determine the qualifications of the prospective juror to serve in the case. Article 786 C.Cr.P. In order to accomplish this purpose, the scope of inquiry should be broad enough to permit parties to question jurors not only for the purpose of showing grounds for a challenge for cause, but also, within reasonable limits, to elicit such facts as will enable them to intelligently and wisely exercise their right of peremptory challenge."
A question seeking to elicit the type of case involved in a prospective juror's prior service is clearly irrelevant to the determination of the juror's qualification to serve on a subsequent jury. State v. Roquemore, supra. Also, the question of the proximity in time of the juror's prior service is irrelevant. Personal exemptions for prior jury service are provided in C.Cr.P. 403, but the exemption is personal.
C.Cr.P. 786 provides that the scope of the voir dire examination shall be within the discretion of the court. Here the trial judge allowed defense counsel to determine which prospective jurors had previously served on criminal juries, but refused to allow further questions to determine when such service occurred and the nature of the case on which each juror had served. Defendants have not demonstrated how their intelligent exercise of peremptory challenges was curtailed by these rulings. The trial judge did not abuse his discretion.
These bills are without merit.
Bill of Exceptions No. 12
This bill was reserved when the trial court denied defendants' challenge for cause of a prospective juror grounded on the fact that he was chief security officer at the Federal Reserve Bank. After denial of the challenge for cause the juror was excused on a peremptory challenge.
The exemptions based upon occupation granted by C.Cr.P. 403(3) to persons engaged in certain occupations are personal to them, and are not a ground for challenge for cause. Defense counsel made no showing that this occupation would influence this venireman as a juror, or that he would not be impartial. C.Cr.P. 797.
This bill is without merit.
Bill of Exceptions No. 14
This bill arose from the following circumstances:
Prior to the jury selection process the defense requested that witnesses be sequestered. The trial court granted the motion and issued the following instruction:
"All witnesses in this case, both for the State and the Defense step into the corridor and remain there until your name is called. Do not discuss your testimony with any other witness in this case until this case is over with. You are to remain in the hallway until your name is called. Now, everybody who is a witness step out."
No objection was made to this order.
After selection of the jury and opening statement the State called Mr. Claude Blanc, the victim, as its first witness. The defense objected to the witness testifying, alleging that the witness had violated the sequestration order by discussing the case with an investigator from the district attorney's office. The witness admitted discussing the case with the investigator.
*790 Defense counsel argues that C.Cr.P. 764 permits only the district attorney or assistant district attorney to discuss a case with a witness after a sequestration order has issued and that the conversation with the investigator violated the defendants' rights under this provision.
C.Cr.P. 764 provides:
"Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice."
Assuming arguendo that the defendants' contention is correct, nevertheless the trial court did not abuse its discretion in permitting the witness to testify. This court has stated on many occasions that the primary purpose of sequestration under C.Cr.P. 764 is to insure that a witness will testify as to his own knowledge of the case without being influenced by the testimony of other witnesses. State v. Washington, 294 So.2d 794 (decided April 29, 1974); State v. Lewis, 288 So.2d 324 (La.1974); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971); State v. McAllister, 253 La. 382, 218 So.2d 305 (1969).
In the instant case the investigator was not a witness in the case. The discussion occurred prior to testimony by any other witness so the witness was not being informed of events and testimony occurring within the courtroom. Under these circumstances we cannot say that the purpose of the order of sequestration was violated, and it was not abuse of discretion to permit the witness to testify.
This bill is without merit.
Bill of Exceptions No. 15
This bill was taken when the trial judge permitted the victim to exhibit scars on his head allegedly resulting from a beating administered with a pistol during the robbery. The objection was based on relevance. It suffices to say that the evidence is probative of a material issue and the probative value outweighs the prejudicial effect.
This bill is without merit.
Bills of Exceptions Nos. 17, 18 and 19
These bills pertain to the trial court permitting amendment of the bill of information at the close of the State's case in chief. The pertinent portions of the information originally read:
"... while armed with a dangerous weapon, to-wit: a pistol, robbed one CLAUDE BLANC of Five Hundred and Eighty-five ($585.00) Dollars in the lawful money of the United States of America,..."
The bill was amended to read:
"... while armed with a dangerous weapon, to-wit: a pistol, robbed one CLAUDE BLANC of Five Hundred and Eighty-five ($585.00) Dollars in the lawful money of the United States of America, (and Propertyamended 1/13/71), ..."
The defense contends that the amendment was one of a defect in substance and the court erred in failing to declare a mistrial as required by C.Cr.P. 487, and, alternatively, that the defendants were surprised by the amendment and the court erred in refusing to grant a continuance as provided in C.Cr.P. 489.
We reject defendants' contention that there was an amendment of a defect of substance in the information as contemplated by C.Cr.P. 487. The bill of information charged the crime in compliance with C.Cr.P. 465 and added certain particulars *791 of the offense. The amendment added another particular of the offense. C.Cr.P. 465(B) provides:
"The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged. If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article."
See also C.Cr.P. 486.
The bill of information was sufficient to charge the offense and gave notice of the transaction for which the defendants were being prosecuted. The amendment amplifying the statement of additional facts which were not necessary to the charging language does not constitute amendment of a substantive defect in the information, and it was not necessary that a mistrial be declared under C.Cr.P. 487.
The situation before us is controlled by C.Cr.P. 488 and 489 which provide:
"When there is a variance between the allegations of an indictment or bill of particulars which state the particulars of the offense, and the evidence offered in support thereof, the court may order the indictment or bill of particulars amended in respect to the variance, and then admit the evidence."
"If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy."
These provisions permit the amendment of an indictment or bill of particulars with regard to the particulars of the offense to conform to the evidence while giving to the accused a right to a continuance where such amendment is prejudicial to his defense.
We believe that it was within the sound discretion of the trial court to permit the amendment of the bill of information in the instant case. Such an amendment is clearly sanctioned by C.Cr.P. 488. The defense relies on State v. Gurney, 249 La. 71, 185 So.2d 19 (1966). That case, although dealing with former R.S. 15:364, is not fairly distinguishable from the one before us. It is, however, in error, and is overruled.
Nor do we believe the trial court erred in refusing to grant a continuance. The defendants were neither surprised nor prejudiced by the amendment of the bill of information. Prior to trial the defendants were aware that the prosecution possessed property, watches, allegedly taken from the victim and seized from the defendants when they were arrested. This property was properly in evidence before the amendment of the information, thus the amendment did not permit different or additional evidence to be presented to the jury.
The defendants were not prejudiced in their defense by the amendment. The nature of the property stolen from the victim made no difference to the alibi defense relied on. There is no allegation or showing that the amendment precluded use of another contemplated defense.
These bills are without merit.
Bill of Exceptions No. 20
This bill was reserved when the trial court permitted the State to ask defendant Blumberg on cross-examination if he had been convicted of any offense while in the Armed Services. After the defense objection grounded on an argument that only *792 felony convictions could be used to impeach was overruled, the witness admitted a court martial conviction for being absent without leave.
R.S. 15:495 provides in pertinent part:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness..."
Convictions admissible under this section have not been limited to those directly reflecting on the veracity of a witness and include misdemeanor convictions. See, State v. Johnson, 294 So.2d 229 (decided April 29, 1974); State v. Prather, 290 So.2d 840 (La.1974); State v. Rossi, 273 So.2d 265 (La.1973); State v. Odom, 273 So.2d 261 (La.1973). We believe that the use of evidence of a conviction for the violation of a penal provision for which imprisonment can be imposed is contemplated by this section. The conviction in question fulfills that requirement. See 10 U.S.C.A. § 856. Cf. State v. Himmelmann, 399 S.W.2d 58 (Mo.1966); Erving v. State, 174 Neb. 90, 116 N.W.2d 7 (1962); Nelson v. State, 35 Ala.App. 179, 44 So.2d 802 (Ala.Cr.App.1950); Jordan v. State, 141 Ark. 504, 217 S.W. 788 (1920).
This bill is without merit.
Bill of Exceptions No. 21
This bill was reserved when the trial court allowed the State to ask the defendant Blumberg "if the officers said that she positively identified both of you, they'd be mistaken, is that right?"
Where the testimony of a witness contradicts that of a prior witness we see no reason why the disparity should not be brought into focus on cross-examination. Where the witness purports to testify of his own knowledge a question such as that before us now neither elicits conjectural nor opinion testimony. Cf. State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971). The ruling of the trial court was correct.
This bill is without merit.
Bill of Exceptions No. 22
This bill was reserved in response to the trial court's denial of defendants' motion for a new trial grounded on an allegation of newly discovered evidence.
The contention is made that after conviction and sentence, five witnesses have been found who will show that Claude Blanc, the complaining witness, perjured himself when he testified that he had no prior acquaintance with the defendants. Affidavits and testimony taken at hearing on the motion indicate that Blanc did indeed know and had dealings with the defendants prior to commission of the crime before the bar. The defense argues that such evidence, corroborative of statements made by the defendants from the stand, would have totally destroyed the credibility of Blanc which would have resulted in a verdict of not guilty since Blanc was the only witness testifying with regard to the actual robbery.
The allegedly newly discovered witnesses are Cavalier, Reuter, David, Kompier and Reed.
The record clearly indicates that the defendants and their counsel knew of Cavalier prior to trial. Cavalier had participated in one of the transactions between Blanc and the defendants prior to commission of the offense at bar. Cavalier testified at hearing on this motion that defense counsel had approached him before the trial with regard to being a witness on behalf of the defendants. No attempt was made to subpoena or otherwise call Cavalier as a witness, even though he was a resident of New Orleans before, during and after the trial.
After conviction and sentence defense counsel gained information through Cavalier which led to the discovery that police officers Reuter and David had knowledge *793 concerning a prior relationship between Blanc, Bradford and Blumberg as a result of an investigation into another offense. Cavalier was in possession of the information, concerning his own arrest, for some months prior to trial. The defendants do not allege nor is there any indication that any attempt was made to interview Cavalier concerning his knowledge of other possible witnesses to tie Blanc with the defendants.
The witness Reed testified that she had seen Blanc and Blumberg together in Blumberg's apartment. This witness was a part time employee of a bar owned by Blumberg in the summer of 1970. Obviously the defendant was aware of this witness; however, no attempt to call her to testify was made even though it appears that she was a resident of New Orleans before, during and after trial.
The witness Kompier, an employee of Blanc and a witness to a portion of the transaction before the bar, testified he had seen Blanc, Bradford and Blumberg having a beer together at La Cantina about one week prior to the robbery. Kompier's whereabouts were unknown at the time of trial; in fact, the State unsuccessfully attempted to subpoena him prior to trial.
C.Cr.P. 851 provides in pertinent part:
"The court, on motion of the defendant, shall grant a new trial whenever:
"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty."
We conclude that the trial court did not abuse its discretion in denying the motion for a new trial. With regard to at least two of the alleged newly discovered witnesses the defendants were aware of the identity of the witnesses and that they were in possession of the facts to which they proposed to testify. No effort was made to call these witnesses. The information which led to the discovery that the police officers could testify on behalf of the defendants certainly was in the defendants' possession prior to trial. This information was either not divulged or defense counsel failed to pursue it. A motion for a new trial on the ground of newly discovered evidence may be properly rejected where the evidence could have been produced before or during trial by the exercise of reasonable diligence. State v. Rossi, supra; State v. Allen, 273 So.2d 504 (La.1973); State v. Jackson, 253 La. 205, 217 So.2d 372 (1968). We have little doubt that had such diligence been exercised, most of the witnesses alleged to be newly discovered could have been produced at trial. Cf. State v. Randolph, 275 So.2d 174 (La.1973). The grant of a motion for a new trial is predicated on the supposition that an injustice has been done. C.Cr.P. 851. That is not the case here.
This bill is without merit.
For the reasons assigned, the convictions and sentences are affirmed.
SUMMERS, J., concurs in the result and assigns written reasons.
BARHAM, J., dissents and assigns reasons.
TATE, J., dissents and assigns reasons.
SUMMERS, Justice (concurring).
Although I agree that the conviction and sentence should be affirmed, I do not agree that the decision in State v. Gurney, 249 La. 71, 185 So.2d 19 (1966), should be overruled as this Court does in the reasons it assigns finding Bills of Exceptions 17, 18 and 19 to be without merit. In my opinion State v. Gurney is clearly distinguishable from the case at bar, it represents correct application of the law to the *794 facts of that case and overruling that case was entirely unnecessary.
In Gurney, at the close of the State's case the court permitted the State to amend the bill of information by changing the date of the alleged offense and by adding the words "jewelry and appliances" to the description of the thing stolen. This Court was of the opinion that "the change of date ... coupled with the change in the object of the theft, adds support to defendant's claim of prejudice."
Thus, there are important differences between the present proceeding and Gurney. In Gurney the accused was charged with theft, whereas in the case at bar the charge is armed robbery. Article 465 of the present Code of Criminal Procedure requires that the indictment or bill of information charging armed robbery recite only that "A.B., while armed with a dangerous weapon, robbed C.D.". By the terms of this article there is no need to describe the property taken. In contrast, an indictment charging theft must allege "A. B. committed theft of _________ (state property stolen) of a value of __________ dollars." Under this authority, therefore, the bill of information in the case at bar properly alleged that Bradford and Blumberg, while armed with a dangerous weapon, robbed Claude Blanc. The description of the property taken in the robbery and the amendment to the indictment made during the trial are pure surplusage; the gravamen of the offense of armed robbery being the taking of somethinganythingfrom another while armed with a dangerous weapon. See La. Code Crim.Proc. art. 465; State v. Lee, 281 So.2d 123 (La.1973). At a trial for armed robbery, therefore, the State need only prove that something of value was taken by use of a dangerous weapon. On the other hand, in order to obtain a conviction on a trial for theft the State must show that certain specific property was stolen.
I respectfully concur.
BARHAM, Justice (dissenting).
I respectfully dissent. I am of the opinion that the motion for a new trial grounded on an allegation of newly discovered evidence is meritorious. The record reflects that court-appointed counsel for these indigents exercised more than reasonable diligence in the preparation and presentation of these defendants' case. It is my opinion that they made adequate showing for the new trial.
TATE, Justice (dissenting).
I respectfully dissent. A new trial should have been granted "that the ends of justice would be served." La.C.Cr.P. art. 851(5).
The complaining witness at the trial, Claude Blanc, perjured himself when he testified at the trial, Tr. 271-72, that he did not know the defendants before the armed robbery. The effect of this testimony was to tell the trial jury that two complete strangers had robbed him.
To the contrary, as the majority notes, the evidence at the hearing on the motion for a new trial indicates that Blanc was a confederate with the defendants in an illegal activity. The charge against them results from their illegal method of debt collection from a confederate who defrauded them.
Two thugs who rob a complete stranger may be as legally guilty of armed robbery as two thieves who use force to recover from a confederate what he has defrauded them of. Considering the severity of the punishment (up to ninety-nine years, without benefit of parole), I am not prepared to say that we should regard as insignificant the jury having been deprived of the entire truthful version of the incident.
Two of the witnesses at the hearing were police officers, who testified that, prior to the trial of the present two defendants, Blanc admitted knowing the defendants in connection with his scheme to *795 purchase stolen money orders from them. Although the evidence does not show (or negative) that the prosecutor knew of these circumstances, it seems to me that the state cannot knowingly rely on perjured testimony to secure a conviction. State v. Gladden, 260 La. 735, 257 So.2d 388, 394 (1972).
Sooner or later the defendants will obtain a hearing on this issue. The ends of justice would be served by ascertaining, before the conviction is final, the extent to which the state knowingly permitted the complaining witness to mislead the jury as to the circumstances of the robbery. We can thus avoid the endless series of post-conviction proceedings otherwise indicated and, if a new trial is granted, the further staleness of the evidence to be introduced at such new trial.
I therefore respectfully dissent.