412 So.2d 984 (1982)
STATE of Louisiana
v.
Ronald W. DROTT.
No. 81-KA-1484.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied April 30, 1982.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Joseph N. Lotwick, Asst. Dist. Attys., for plaintiff-appellee.
W. Jeff Hollingsworth, and David R. Buckley, Baton Rouge, for defendant-appellant.
*985 JASPER E. JONES,[*] Judge.
Appellant, Ronald W. Drott, was charged with theft of $350.00 in violation of LSA-R.S. 14:67 and pled not guilty. Following a denial by the trial judge of defendant's motion to suppress money seized at the time of his arrest and an inculpatory statement made at the same time, the defendant changed his plea to guilty, reserving his right to appeal the denial of his motion to suppress. The defendant was sentenced to eighteen months in the East Baton Rouge Parish prison.
On appeal Drott relies upon one assignment of error for the reversal of his conviction and sentence. He contends that the trial judge erred when he denied his motion to suppress the money seized at the time of his arrest from the truck he was driving.
THE FACTS
Hernandez Ice Company was protected by a burglary alarm system serviced by Alford Security System. A key to Hernandez's building was supplied to Alford who kept it on a board in the dispatcher's office. When the alarm at Hernandez was activated, the dispatcher would give the key to one of the Alford security guards who would proceed to Hernandez' where he would meet a Baton Rouge police officer who had also been sent to Hernandez in response to the activated alarm, and the two of them would proceed to investigate the cause for the alarm's activation.
On the night of November 29, 1979, the Hernandez alarm sounded and was investigated by defendant Drott, a security officer of Alford's, and a Baton Rouge police officer, but they found no evidence of any forced entry into the Hernandez building, nor any indication that anything had been taken from the building. On the following morning the manager of Hernandez discovered that some of Hernandez's money had been removed from a file cabinet and he reported the incident to Corporal Starkey of the Baton Rouge Police Department.
On the night of January 9, 1980, the Hernandez alarm again activated and defendant Drott was again sent to Hernandez' where he and a Baton Rouge police officer investigated the cause for the alarm and they again found no evidence of a forced entry into Hernandez' building, nor any indication that any of Hernandez's property had been taken. The following day the manager of Hernandez discovered that some of the company's money had been removed from the file cabinet and reported the incident to Corporal Starkey and expressed the opinion that the theft of Hernandez' money following the two activations of the burglary alarms led him to believe that the money was being taken by the Alford guard and/or the police officer who had entered the Hernandez building to investigate the cause of the alarm.
Because a different police officer had participated in each investigation of the activated alarm and Drott had participated in both of the burglary alarm calls, Drott became the primary suspect of the two thefts.
Corporal Starkey in an effort to determine the party responsible for the thefts placed the Hernandez building under surveilance on the night of February 12 and early morning hours of February 13, 1980. He sent detectives Tommy Gipson and Eddie Thomas in an unmarked car to the scene of the Hernandez building where they parked at a location where they could observe the building. Corporal Starkey directed Police Officer McDaniel to patrol in a marked police car equipped with flashing lights in the area so that he could respond to the Hernandez alarm which was to be activated by the detectives on stake out.
In further preparation for the planned surveilance the manager of Hernandez prepared a list of the serial numbers of the money belonging to the company which was left in the file cabinet and supplied a copy of the list to detective Gipson.
*986 At about 1:00 a. m. the officers on stake out activated the alarm and Officer McDaniel received notice of the alarm and went to Hernandez where he met Alford's guard, Drott, who had secured the key from the dispatcher and the two of them entered the building and investigated the cause for the alarm, and of course, found no forced entry or other reason for the alarm. After they completed the investigation, Officer McDaniel left Hernandez, but patroled in the general area. Drott left Hernandez immediately after McDaniel's departure. The two detectives on stake out continued their observance of the Hernandez building, and about 2:05 a. m. observed Drott return alone and enter the Hernandez building where he remained about fifteen minutes. The officers believed his entry to have been unauthorized because they had been listening to their police radio and there was no indication that Drott had been dispatched to Hernandez in response to another alarm. When Drott left Hernandez, Detective Gipson and his partner believed that Drott had committed a theft and immediately followed him. They contacted McDaniel on the radio and instructed him to stop Drott, who was driving an Alford's pickup truck. McDaniel stopped the Drott vehicle and he, along with the two officers who were following Drott in the unmarked car, had Drott get out of the truck and took his revolver from him.[1] Within thirty to sixty seconds following the stopping of the Drott vehicle Detective Gipson looked into the cab of the truck through an open door on the driver's side and observed a $5 bill sticking out of a crack between the back and bottom part of the seat immediately behind the steering wheel. He pulled the $5 bill from the seat and two or three $20 bills came out of the crack between the seat along with the $5. Gipson then made a further search behind the seat and found several hundred dollars. All of the money had serial numbers which matched the list compiled by the manager of Hernandez from the company money which was left in the file cabinet.
THE ISSUE
Drott contends that the money seized from the truck should have been suppressed as the product of an unconstitutional search. The issue is: was the search unconstitutional? We conclude that it was not and affirm.
THE LAW
The rule that a search conducted without a warrant issued upon probable cause is per se unreasonable is subject to only a few specifically established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). One of those exceptions is the search incident to lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search incident to arrest is limited to the area within the arrestee's immediate control. State v. Bradford, 298 So.2d 781 (La.1974). It is permissible to search the interior of an automobile after arresting its occupants when they remain in proximity to the vehicle. State v. Nicholas, 397 So.2d 1308 (La.1981); State v. Bradford, supra; State v. King, 322 So.2d 205 (La. 1975); State v. Wilkens, 364 So.2d 934 (La. 1978).
In the recent U. S. Supreme Court case of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the court clearly set forth the permissible limits of the warrantless search of an automobile following the arrest of one of its occupants:
"Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger *987 compartment is within reach of the arrestee, so also will containers in it be within his reach." Id. at 2864.
If the arrest here made was valid the denial of the motion to suppress the money seized from the seat of the truck was correct. A warrantless arrest is valid when based on probable cause. LSA-C. Cr.P. art. 213; State v. Ranker, 343 So.2d 189 (La.1977).
Probable cause exists when the facts and circumstances within the officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed, or is committing, an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Ranker, supra. It takes more and better evidence to provide probable cause when the police do not know a crime has been committed. State v. Johnson, 363 So.2d 684 (La.1978). Probable cause is to be judged by the probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Smith, 377 So.2d 1220 (La.1979).
In this case the arrest occurred at the time McDaniel stopped Drott. An arrest occurs when the circumstances indicate an intent, on the part of the officers, to effect an extended restraint on the subject's liberty. State v. Tomasette, 381 So.2d 420 (La.1980); State v. Wichers, 392 So.2d 419 (La.1980); State v. Bell, 395 So.2d 805 (La.1981). Gipson testified that Drott was in custody and would not have been allowed to leave from the time he was stopped by McDaniel on the instructions of himself and Thomas.
The question in this case then becomes was there probable cause to arrest Drott at the time he was pulled over. As did the district judge, we conclude there was probable cause.[2]
Though Gipson and Thomas did not know that a theft had been committed when they had Drott stopped, they had considerable information indicating that a crime had been committed. They knew that there had been a series of thefts from the Hernandez Company. They knew of the pattern that ran through those thefts. They knew that Drott's return to the premises on the morning of February 13 fit the pattern of the thefts and that he was not returning in response to the alarm and that he was not accompanied by a Baton Rouge police officer which was the normal procedure when an Alford Guard entered the building in response to an alarm. For these reasons the officers knew Drott's entry into Hernandez was apparently unauthorized.
In light of what Gipson and Thomas knew and had seen, they, as men of average caution, had ample grounds to justify a belief that Drott had committed a theft. They had probable cause at the time they had McDaniel stop Drott. The search of the truck was a valid search incident to lawful arrest.
The defendant's conviction and sentence is AFFIRMED.
DIXON, C. J., concurs in denial.
CALOGERO, J., would grant a rehearing.
DENNIS, J., would grant a rehearing to consider whether Art. 1, § 5 of the Louisiana Constitution of 1974 permits a warrantless search of a vehicle under the circumstances of this case. In State v. Hernandez, 410 So.2d 1381 (La.1981), we noted that the rule of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) has been criticized by jurists and scholars and, more importantly, it is not a proper rule of police conduct under our state constitution in view of its explicitly broader guarantees of individual liberty and privacy.
NOTES
[*] The Honorables Pike Hall, Jr., Charles A. Marvin, Jr. and Jasper E. Jones, Judges of the Court of Appeal, Second Circuit, participated in this decision as Associate Justices ad hoc, joined by Associate Justices John A. Dixon, Jr., Chief, Walter F. Marcus, Jr., Fred A. Blanche, Jr. and Harry T. Lemmon.
[1] As the officers removed Drott's revolver, Officer McDaniel conducted a pat down search of Drott which revealed a cigarette package in which McDaniel found a marijuana cigarette. McDaniel informed Drott he was under arrest, but as is hereinafter explained in this opinion, Drott was already under arrest before he was so informed by McDaniel following the discovery of the marijuana cigarette.
[2] The trial judge's conclusions as to probable cause are entitled to great weight. State v. Nicholas, 397 So.2d 1308 (La.1981).