602 So.2d 256 (1992)
STATE of Louisiana, Appellee,
v.
Don Ray HALL, Appellant.
No. 23842-KA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1992.
Indigent Defender Office by Richard E. Hiller, Shreveport, for defendant/appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Dan Keele and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for plaintiff/appellee.
*257 Before NORRIS, LINDSAY and HIGHTOWER, JJ.
NORRIS, Judge.
Don R. Hall was charged by bill of information with possession of cocaine, a Schedule II Controlled Dangerous Substance, with the intent to distribute. La.R.S. 40:967 A(1). A codefendant on the bill, Darnell Johnson, had his case severed before Hall was tried. After his jury trial, Hall was found guilty as charged. He was then billed as and adjudicated a second felony offender. La.R.S. 15:529.1 A(1). The trial court imposed the minimum sentence of 15 years at hard labor. Hall now appeals, urging by two assignments that the evidence was insufficient to convict and that the court erred in handling the testimony of his codefendant. For the reasons expressed, we affirm.

Facts
Shreveport Police Corporal Linda Kinchen and Officer Steve White were members of "Operation THOR," a specialized street drug unit. On the afternoon of April 12, 1990 they were patrolling in the Hollywood area of Shreveport in a marked police car. Passing a convenience store on Henry Street, they noticed an older model, maroon-colored pickup truck spin out of the parking lot and drive away at high speed. Cpl. Kinchen turned the police car around, pursued the truck south on Broadway and pulled it over on Baxter Street.
Two men were in the cab of the truck. Cpl. Kinchen ordered the driver to get out. He did so and met her halfway between the truck and the police car. He did not have a driver's license on his person. He told Kinchen that he had bought the truck only two weeks earlier and so he did not have registration papers in his name. The papers in the car showed the truck was registered to a man named Randy Cochran. The driver identified himself as "Donald Johnson," but this name could not be traced in the system. According to Officer White, who was listening to the conversation, the man was giving Kinchen "false names."
Seeing that Cpl. Kinchen was having little success with the driver, Officer White walked to the passenger side of the truck and asked the passenger for his ID; he said he had none. As White was asking him to alight, he glanced inside the truck and spotted two items in plain view. On the floorboard beneath the driver's seat was a small brown paper bag and on the "hump" of the floor was a smaller packet, about 1" long, tightly wrapped in plastic in the manner of crack cocaine. Officer White reached into the truck and picked up the paper bag. Inside it he found an "enormous" package of what appeared to be crack cocaine. White immediately placed both the driver and passenger of the truck under arrest for possession of cocaine with the intent to distribute. The passenger identified himself as Darnell Johnson. The driver, who had refused to give his true name to Cpl. Kinchen, was eventually identified as Don R. Hall, the defendant herein.
Officers recovered a total of 95 wrapped packets from the bag and the "hump" of the truck. James Goebel, a forensic chemist from the North Louisiana crime lab, testified that each of the packets contained a "whitish, yellowish" material. A sampling from one of these packets proved positive for cocaine in a gas chromatograph test. Corporal Mike Shannon, who was accepted as an expert in the field of drug trade and customs at the street level, testified that small packets like these were suitable to be sold to individual buyers on a street corner. He estimated each packet contained about 0.3 grams of cocaine and was worth $10. The whole bag was worth $950.
In his defense, Hall called Randy Cochran, a Shreveport fireman and the registered owner of the maroon pickup in which Hall was stopped. Cochran's testimony suggested that the paper bag might have belonged to a man named "Eddie" (Cochran was not sure about the first name and did not know the last name) who had kept the truck for two days to fix the clutch. Moments after he got the truck back from "Eddie," Cochran loaned it to Hall, who was arrested in it a short while *258 later. Cochran insisted that the cocaine in his truck was not his, and that on April 12 he had not sold the truck to Hall, though they had talked about it.
Hall attempted to call as a witness Darnell Johnson, his codefendant. Johnson's case had been severed and he was awaiting a separate bench trial. The state objected, arguing that if Johnson took the stand he would only plead the Fifth Amendment. With the jury removed, Johnson was called to the stand and, on the advice of counsel, did in fact invoke the Fifth Amendment. The court sustained the state's objection and refused to let Hall call Johnson to testify before the jury.
As noted, the jury found Hall guilty as charged. After a second felony offender adjudication, he was sentenced to 15 years at hard labor, the minimum permitted. La. R.S. 40:967 B(1), 15:529.1 A(1).

Discussion: Testimony of codefendant
By his second assignment Hall urges the trial court erred by "allowing the codefendant who was not on trial at the time, to invoke the Fifth Amendment right against self-incrimination, thus preventing Don Ray Hall from putting on a full defense and denying [him] * * * a fair trial." Hall does not elaborate on his argument or offer any citation of authority; he simply argues that "the trial court committed reversible error in not requiring Darnell Johnson to testify[.]" Br., 5. It is quite clear, however, that Johnson could not "be compelled in any criminal case to be a witness against himself." U.S. Const. amend. 5; La. Const. art. 1 § 16. There was no error in allowing Johnson to "take the Fifth."
Furthermore, the trial court's actions did not even in the general sense deprive Hall of a fair trial. Hall naturally had the right to compel the attendance of witnesses and present a defense. La. Const. art. 1 § 16; U.S. Const. amend. 6. However, the accused does not have the right to impress on the jury that a codefendant is claiming his right against self-incrimination. In State v. Berry, 324 So.2d 822 (La.1975), cert. denied 425 U.S. 954 (1976), Justice Tate stated the rationale concisely:
It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege. American Bar Association Standards of Criminal Justice, Relating to the Prosecution Function, Standard 5.7(c), and Relating to the Defense Function, Standard 7.6(c) (1971).
As the commentaries to these standards indicate, claims of privilege are preferably determined outside the presence of the jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination as to its assertion. (The commentaries also note the impropriety of either counsel arguing any inference from the failure of another to call a witness, if the failure to do so is known to be based on the witness's claim of privilege.) For similar reasons, the courts have uniformly rejected a defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege before the jury. See United States v. Lacouture, 495 F.2d 1237 (5th Cir.1974), and decisions therein cited. See also Namet v. United States, 373 U.S. 179 [83 S.Ct. 1151, 10 L.Ed.2d 278] (1963). (emphasis added)
This court recently reiterated the rationale of Berry. See State v. Taylor, 550 So.2d 712 (La.App.2d Cir.1989), writ denied 556 So.2d 54 (1990). There was no error in the way the trial court handled Hall's request to call his codefendant as a witness. This assignment does not present reversible error.

Sufficiency of evidence
By his first assignment Hall urges the evidence was insufficient to prove beyond a reasonable doubt that he was in possession of the cocaine or had the intent to distribute it. He asserts that he had borrowed the truck from its rightful owner only moments before he was arrested, and that his *259 mere presence in the area where a CDS is found does not prove possession. In support he cites State v. Harvey, 463 So.2d 706 (La.App. 4th Cir.1985).
The standard of review for sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984). The rule as to circumstantial evidence is that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. However, R.S. 15:438 does not impose a stricter standard of appellate review than Jackson; Jackson is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Sutton, 436 So.2d 471 (La.1983); State v. Christopher, 561 So.2d 935 (La.App. 2d Cir.), writ denied, 567 So.2d 1124 (1990).
The jury's implicit findings as to the credibility of witnesses are entitled to great weight. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989), writ denied 567 So.2d 93 (1990).
Two elements must be proved to support Hall's conviction: (1) possession of the CDS and (2) intent to distribute it. La.R.S. 40:967 A(1); State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989).
Possession. One need not actually possess the CDS; constructive possession is sufficient to convict. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Tyler, supra. Factors that may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are (1) the defendant's knowledge that illegal drugs were in the area; (2) his relationship with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) his physical proximity to the drugs; and (6) any evidence that the particular area was frequented by drug users. State v. Love, 527 So.2d 62 (La.App. 3d Cir.1988); State v. Tyler, supra.
Sitting in the driver's seat, Hall was in very close proximity to the bag of cocaine on the floor and the packet on the "hump." His ready access to them cannot be seriously contested. Packages of CDS similarly located in an enclosed vehicle are generally found to be within the driver's constructive possession. See State v. Tyler, supra; State v. Christopher, supra; State v. Ankrum, 573 So.2d 244 (La.App. 1st Cir.1990); State v. Morgan, 557 So.2d 977 (La.App. 4th Cir.), writ denied 564 So.2d 317 (1990). The jury was entitled to reject the defense theory that someone named "Eddie" was responsible for the bag and Hall was simply unaware that 95 packets of cocaine were in the truck. Also, Hall intentionally gave incorrect information to Cpl. Kinchen, as though to mislead her; this is inconsistent with the claim that Hall was not exercising dominion and control over a CDS.
There is much more evidence than the "mere presence" of the defendant in a house where drugs were seized, which was found insufficient to sustain the verdict in State v. Harvey, cited by Hall in brief. Viewed in light most favorable to the state, the record evidence was sufficient to prove that Hall constructively possessed the crack cocaine.
Intent to distribute. Intent is a fact which may be inferred from circumstantial evidence. State v. Kahey, 436 So.2d 475 (La.1983). Factors which are useful in determining whether the circumstances are sufficient to prove an intent to distribute a CDS include (1) whether the defendant ever distributed or attempted to distribute the CDS; (2) whether the CDS was in a form usually associated with distribution to others; (3) whether the amount was such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's possession was inconsistent with personal use only; and (5) the presence *260 of paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Tyler, supra.
In this case Cpl. Shannon was accepted as an expert in the field of drug trade and customs at the street level. He testified at some length as to the manner of manufacturing crack cocaine and parceling it out for street distribution. He testified that the packets seized in this case were the right size to be sold to individual buyers who would smoke them in crack pipes. He also testified that 95 "dime packets" of crack was considerably more than the two or three hits generally associated with personal use only. This unrebutted expert evidence was sufficient to prove that Hall intended to distribute the crack. See State v. Bailey, 452 So.2d 756 (La.App. 2d Cir.), writ denied 456 So.2d 161 (1984); State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.), writ denied 450 So.2d 644 (1984).
After viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt that Hall constructively possessed and intended to distribute the crack cocaine seized from the truck he was driving. The first assignment of error does not present reversible error.

Conclusion
Finally, we have reviewed the entire record and find nothing we consider to be error patent. La.C.Cr.P. art. 920(2). For the reasons expressed, Don R. Hall's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.