616 So.2d 285 (1993)
STATE of Louisiana, Appellee,
v.
Rex L. APPACROMBIE, Appellant.
No. 24670-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*287 Indigent Defender Office by Richard E. Hiller, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul Carmouche, Dist. Atty., Daniel R. Keele, Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
After a jury trial, the defendant, Rex L. Appacrombie, was convicted as charged of possession of cocaine with intent to distribute, in violation of LSA-R.S. 40:967. He was sentenced to serve 12 years at hard labor with credit for time served. For the reasons set forth below, we affirm the defendant's conviction and sentence.

FACTS
On May 30, 1990, agents of the narcotics division of the Shreveport Police Department executed a search warrant at a house rented to the defendant. When the police entered the house, a co-defendant, Eric D. Smith, ran from the kitchen down the hallway toward the bathroom. An officer stopped Smith outside the bathroom and found a bag of 134 individually wrapped rocks of crack cocaine on the bathroom floor near the commode. The officer testified that Smith was in a position from which he could have thrown the drugs on the floor. Smith was carrying a loaded .32 caliber automatic handgun in his back pocket and more than $1,000 in cash in his shirt pocket.
The officers found the defendant and another man, Wilbert Thomas, in the kitchen. On the kitchen table were two stacks of money totaling $490, two Realistic radio scanners, a list of scanner frequencies, and a set of digital scales.
During their search of the house, the police discovered several items concealed in a furnace closet in the kitchen. They included a loaded .357 magnum revolver and another set of digital scales. A paper bag in the closet contained glass beakers, a 10-gram scale, and a plastic bag full of smaller plastic bags of the same kind used to package the crack cocaine recovered from the bathroom. (The scales and glass beakers were covered with a white powdery residue.) There was also a box of razor blades. Expert testimony at trial demonstrated that these items were commonly used for the manufacture and distribution of crack cocaine. Additionally, a box of ammunition for the .357 magnum revolver was found in the living room.
The defendant, Smith, and Thomas were all charged with possession of cocaine with intent to distribute. Following a jury trial, the defendant and Smith were convicted as charged. Thomas was acquitted.
The defendant was sentenced to serve a term of 12 years at hard labor, with credit for time served.
The defendant appealed. In his assignments of error, he contends that the verdict is contrary to the law and the evidence and that the trial court erred in imposing an excessive sentence. He has also requested that the record be reviewed for errors patent.

SUFFICIENCY OF EVIDENCE

Law
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of *288 every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
To support a conviction for possession with intent to distribute, the state must prove (1) possession of the controlled dangerous substance and (2) intent to distribute it. LSA-R.S. 40:967 A(1); State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989); State v. Hall, 602 So.2d 256 (La.App. 2d Cir.1992), writ denied, 609 So.2d 254 (La.1992). One need not actually possess the controlled dangerous substance; constructive possession is sufficient to convict. State v. Sweeney, 443 So.2d 522 (La.1983); State v. Tyler, supra; State v. Hall, supra.
Factors which may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are: (1) the defendant's knowledge that illegal drugs were in the area; (2) his relationship with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) his physical proximity to the drugs; and (6) any evidence that the particular area was frequented by drug users. State v. Hall, supra at 259.
The test for determining whether intent to distribute exists in a particular case includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as baggies or scales. State v. House, 325 So.2d 222 (La.1975); State v. Hall, supra; State v. Lowery, 609 So.2d 1125 (La.App. 2d Cir.1992).
The intent to distribute may be inferred from the surrounding circumstances. The trier of fact may look to how the substance was packaged, the quantity of the substance seized, and the presence of scales or other paraphernalia for drug use or packaging. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Lowery, supra. Testimony of street value and dosage units of the drug is also relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La.1976).

The Testimony
The evidence presented at trial demonstrated that the house at which the search warrant was executed was leased to the defendant. The records of the water department of the City of Shreveport listed the account at that address in his name. Co-defendant Thomas, a friend who had visited the defendant at home on several occasions, testified that the defendant resided there. Furthermore, one of the arresting officers testified that the defendant verified that he lived in the house.
The illegal substance seized on the premises consisted of 134 rocks of crack cocaine. (A forensic chemist from the North Louisiana Criminalistics Laboratory testified that a random sampling of the rocks determined that they were cocaine.) The rocks were individually wrapped in small plastic baggies. The testimony of the police officers demonstrated that this was consistent with packaging for street level distribution.
Additionally, the police found several small, unused plastic bags in the furnace closet in the defendant's kitchen. Officer J.J. Silva of the Shreveport Police Department, one of the officers who executed the *289 search warrant, testified that this type of baggie was commonly used for distribution of crack cocaine. Also found concealed in the furnace closet were glass beakers. Officer Silva testified that these "chemistrytype" pieces of glassware were commonly used to cook crack cocaine. Also, in his experience, the various sets of scales, one of which was covered with a white powdery residue, were of the sort used in narcotics trafficking to weigh crack cocaine for distribution. Officer Silva also testified that one of the radio scanners was operational and set to monitor the Shreveport Police Department's information channel.
Officer Don Johnson, also of the Shreveport Police Department, assisted in the execution of the search warrant. He testified that he had seen similar sets of scales when executing warrants at crack houses. He also testified that the powdery substance on one set of scales was consistent in appearance with cocaine residue. (However, the powder was not tested by the crime lab.)
Sergeant Henry Whitehorn, the supervisor for the State Police Narcotics Section in Shreveport, testified as an expert in narcotics trafficking and transactions. He explained in detail the procedures for manufacturing and distributing crack cocaine. In his opinion, the crack cocaine recovered in the defendant's house was packaged for street sale and was in a quantity exceeding personal use. This opinion was strengthened by the presence of the other items, such as the scales, the radio scanners, and the guns. He testified that scanners such as the ones found on the defendant's kitchen table are normally used as a defense by drug dealers to determine if the police are en route to a particular place for a drug raid. He also testified that weapons are not uncommon among drug dealers because of the threat of being "ripped off" by other drug dealers, as well as fear of the police.
Sergeant Whitehorn testified that he had previously seized similar scales which were used to weigh cocaine for packaging. He testified that the test tube was indicative of the manufacture of crack cocaine. He had also seen unused little baggies (like the ones found in the furnace closet) packaged in a similar fashion in "head shops," where drug paraphernalia is sold. Also, the razor blades are commonly used to cut up larger rocks of crack cocaine after it is cooked. Sergeant Whitehorn testified that he believed that the rocks were worth about $20 each.

Discussion
The defendant contends that the evidence was insufficient to prove that he was in possession of the cocaine. Specifically, he contends that he, like his acquitted codefendant, was merely "in the wrong place at the wrong time." He also stresses the fact that no drugs were found on his person.
The first element the state was required to prove was possession of the cocaine by the defendant. It is obvious from the record that the defendant exercised sufficient dominion and control over the drugs to establish constructive possession. The drugs were found in the defendant's home, which was located in an area known for drug trafficking. Co-defendant Smith was in the kitchen with the defendant and Thomas when the police burst into the house to execute the search warrant. Smith, who was armed with a concealed handgun and carrying more than $1,000 in cash, fled down the hallway toward the bathroom to try to flush the drugs down the toilet. However, Officer Silva stopped him before he could do more than throw the bag containing the cocaine into the bathroom.
The defendant himself was found in close physical proximity to the stacks of money, the scanners, and the scales on the kitchen table. He was also near the furnace closet in the kitchen where the other drug paraphernalia and the second loaded gun were concealed.
The second element of the offense of possession of cocaine with intent to distributethe intent to distributewas also amply proven by the state. The defendant's home contained numerous items of drug paraphernalia indicative of distribution.
*290 The crack cocaine itself was uniformly packaged for street distribution, and the amount of the drug found in the house far exceeded personal use.
Therefore, we find that the state presented sufficient evidence to support the defendant's conviction for the offense of possession of cocaine with intent to distribute.
This assignment of error is without merit.

EXCESSIVE SENTENCE
Defendant argues that his sentence is excessive. However, he was sentenced on April 14, 1992, after the effective date of LSA-C.Cr.P. Art. 881.1. This article provides that the failure to file a motion for reconsideration of sentence precludes a defendant from raising claims about the sentence, including excessiveness, for the first time on appeal or review. Because defendant did not file a motion for reconsideration in this case, he is precluded from raising a claim of excessiveness of sentence. State v. Bryant, 607 So.2d 11 (La.App. 2d Cir.1992).
This assignment of error is meritless.

ERROR PATENT
Furthermore, we have searched the record for error patent and found none.
This assignment of error is also meritless.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.