694 So.2d 1209 (1997)
STATE of Louisiana, Appellee,
v.
America Rachel MARTIN and Jonathan Kevin Monroe, Appellants.
Nos. 29352-KA, 29433-KA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1997.
*1211 B. Kevin Holland, Indigent Defender Board, for Appellant America Rachel Martin.
John Michael Lawrence, Indigent Defender Board, for Appellant Jonathan Kevin Monroe.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, Spencer Hays, Assistant District Attorney, for Appellee.
Before STEWART, CARAWAY and PEATROSS, JJ.
CARAWAY, Judge.
A jury convicted America Martin and Jonathan Monroe of possession of cocaine with intent to distribute and the trial court sentenced them to five years imprisonment at hard labor. Because the record contains insufficient evidence upon which the jury could have found Martin guilty of the charged crime, we reverse her conviction. Monroe's conviction and sentence are affirmed.

Facts
In March 1994, a confidential informant (CI), under the supervision of the Bossier City Police Department (BCPD), twice purchased crack cocaine from 1121 Beverly Street in Bossier City Louisiana with marked money. At trial, the state did not disclose the identity of the individual who sold the cocaine to the CI. America Martin lived at 1121 Beverly, a duplex which shared a common yard and porch with another apartment, and her boyfriend Jonathan Monroe visited frequently.
On March 26th, 1994 at 12:16 a.m., a day or two after the CI's purchases, BCPD officers executed a search warrant for the Beverly Street home. When police arrived approximately 15 people were at the residence with the majority of them standing in the yard. Police discovered thirty-three $20 rocks of crack cocaine each packaged for individual sale in separate plastic baggies and hidden in a lawnmower sitting about five feet from the front porch of the duplex. Inside the residence, officers found three rocks of crack similarly packaged underneath the carpet on the staircase next to a partly open window. A phone was positioned near the drugs on the staircase. One final unpackaged rock of cocaine was found underneath the kitchen stove. None of the drugs were found in plain view.
Police also seized three loaded pistols and a scoped semi-automatic .22 rifle. A portable cellular telephone marked with the name "Shug," which is Monroe's nickname was found on the kitchen table and presented as *1212 evidence at trial. A Bossier City traffic citation and an employee time card from McElroy Metals, both of which were issued to defendant Monroe, were found in an upstairs bedroom.
Police arrested Monroe at the scene. He was carrying $274.00 in cash and two $10 bills were identified by BCPD officers as "buy money" used in the recent drug sale to the CI. Monroe told the officers that he had won the money in a poker game and his sister testified that there had been several such games at the Beverly residence over the previous two days. Monroe did not have any drugs on his person. One officer testified that Monroe was outside the home when he was arrested but his sister testified that he was inside. The officer who actually searched Monroe did not identify his location at the time the search began.
Also, detained during the search were Roderick Martin, the cousin of America Martin, and Donnie Monroe and Tawanna Monroe, the brother and sister of Jonathan Monroe. In addition to Monroe, the names of fourteen other persons detained inside or outside the residence were reported at trial.
Martin was not at the residence when the warrant was executed. She was arrested at the Beverly St. residence on March 29, 1994. Police found no drugs, drug paraphernalia or buy money on her person or in the home at the time of her arrest. The defendants were tried together and represented by retained counsel. They have separate attorneys for this appeal.

Discussion

I.
Sufficiency of Evidence of Conviction of Martin
Martin correctly asserts that the evidence adduced at trial was insufficient to convict her of possession of cocaine with intent to distribute.[1] The criteria for evaluating the sufficiency of the evidence is whether, upon viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could find that the state proved all elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Washington, 597 So.2d 1084 (La.App. 2d Cir.1992); La.C.Cr.P. art. 821.
In State v. Shaw, 27,892-27,893 (La.App. 2d Cir. 4/3/96), 672 So.2d 237, 341, we stated:
The Jackson standard applies to both direct and circumstantial evidence. Direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Lilly, 468 So.2d 1154 (La.1985); State v. Turner, 591 So.2d 391 (La.App. 2d Cir.1991), writ denied, 597 So.2d 1027 (1992). When the direct evidence is viewed in the light most favorable to the prosecution, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of a crime. State v. Stokes, 26,003 (La.App. 2d Cir. 6/22/94), 639 So.2d 395. For circumstantial evidence to convict, it must exclude every reasonable hypotheses of innocence. La.R.S. 15:438.
The criminal provision for these convictions, La.R.S. 40:967, provides, in pertinent part:
Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II.
*1213 The crime of possession with intent to distribute cocaine requires the state to show the defendant possessed the controlled dangerous substance with specific intent to distribute it. State v. Elzie, 343 So.2d 712 (La. 1977). The element of possession may be established by showing either that the defendant exercised actual or constructive possession of the substance. State v. Young, 618 So.2d 1149 (La.App. 2d Cir.1993). No drugs were ever found in Martin's possession and the state presented no evidence that she exercised actual control over any drugs; therefore, the state was required to prove she constructively possessed the contraband.
For a person to constructively possess a drug, it must be subject to his dominion and control, and he must have knowledge of its existence. State v. Lias, 28,091 (La. App. 2d Cir. 05/08/96), 674 So.2d 1044. Proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. State v. Johnson, 404 So.2d 239 (La.1981). However, the mere presence of the defendant in the area where a controlled dangerous substance is found, or mere association with a person in possession of the substance, is insufficient to constitute constructive possession. State v. Harris, 597 So.2d 1105 (La.App. 2d Cir.1992).
Several factors may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession. They are (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia and (6) evidence that the area was frequented by drug users. State v. Appacrombie, 616 So.2d 285, 288 (La.App. 2d Cir.1993), writ denied, 623 So.2d 1302 (1993).
In State v. Young, supra, this court reversed a drug conviction because of insufficient evidence of constructive possession and noted that in constructive possession cases, the defendant's absence from the scene, the access to the premises of persons other than the defendant and the defendant's physical remoteness from drugs in the home all tended to weaken the state's case that the defendant knew about the contraband at issue.
The only evidence presented at trial regarding America Martin established that she lived at 1121 Beverly. It is uncontroverted that Martin was not present the night of the search when fifteen other people were present at the residence. The record is devoid of any evidence tending to prove that the drugs were subject to Martin's dominion and control, or that she had knowledge of their existence. When police arrested Martin several days after the raid they found no drugs, paraphernalia or evidence of recent drug use. Police failed to tie Martin to the drugs either temporally or spatially. Although Martin had complete access to the house, none of the drugs were found in plain view or in areas of the home under which she had complete control. There was no testimony that she knew anything about the drugs or had association with the drug culture. There was also no testimony that she was the person who sold drugs to the BCPD informant.
One rock of cocaine was found in the house underneath the stove. Unlike the other drugs which were found in places near the presence of persons at the scene and in places where the drugs may have quickly been stashed, the cocaine under the stove, in a remote area of the house, might be closer tied to the occupants. Testimony established that crack cocaine is a substance created by first boiling cocaine and baking soda whereby the use of a stove would be important. No such manufacturing process was occurring at the time of the search.
The testimony regarding the occupancy of the apartment was not entirely clear. The state presented no evidence regarding who actually owned or rented the apartment. The officers who had conducted the surveillance over an extended period of time maintained that both Martin and Monroe were the primary occupants, and the evidence of Monroe's personal effects, the traffic ticket and the employment record, in the upstairs bedroom are sufficient to demonstrate his access and occupancy. Nevertheless, the defense *1214 witnesses indicated that the apartment was rented to Martin, and Tawanna Monroe testified that Roderick Martin, age twenty, also resided at the apartment. Roderick Martin was one of the persons present at the time of the search.
Viewing the evidence in the light most favorable to the prosecution, a rational juror could not reasonably conclude that all of the elements of constructive possession of cocaine were proven beyond a reasonable doubt. The presence of the one rock of cocaine under the stove, while tending to show that the occupants of the dwelling were more directly involved with the manufacture of the illegal drug, is insufficient to establish Martin's constructive possession. Accordingly, we reverse Martin's conviction for possession of cocaine with intent to distribute.

II.

Sufficiency of Evidence of Conviction of Monroe
Turning now to Monroe's assignments of error, the same law cited above applies. Monroe likewise attacks his conviction for the insufficiency of the evidence. He also asserts that at the minimum his conviction "should be modified to possession of cocaine instead of possession of cocaine with intent to distribute."
With Monroe, as with Martin, the evidence of his occupancy of the apartment is substantial. At their Beverly Street apartment, the drug buys by the CI had recently occurred and the stray rock of crack cocaine found in the kitchen under the stove can be inferred to have been cooked or manufactured by the occupants of the dwelling. Added to this evidence which tends to show some involvement with drug use is the evidence of Monroe's presence at the residence when the warrant was executed and his possession of a large amount of cash, including the actual money used in the CI's drug buy. Due to the open access of all the parties at the gathering that night to the hiding places where the other drugs were found, we discount the sufficiency of the evidence standing alone of those drugs and of Monroe's presence at the large gathering of people. Those drugs were inexplicably stashed away and not in plain view. See Young, supra, and State v. Harris, 597 So.2d 1105 (La.App. 2d Cir.1992). Nevertheless, the slight inference of Monroe's criminal involvement gathered from that multiple-party drug scene coupled with the additional implications of Monroe's primary occupancy of the dwelling and his possession of the tainted money are sufficient in our opinion for the conviction in this instance. All of the evidence together excludes every reasonable hypothesis that Monroe was not in constructive possession of the drugs found in the search and in actual possession of the drugs sold to the CI.

Other Crimes Evidence
Police seized a Bossier City Police traffic ticket in an upstairs bedroom. This item was admitted into evidence over defense counsel's objection. On appeal, defendant complains that the ticket, a citation for drinking in public, amounts to a prohibited reference to evidence of other crimes. La. C.E. art. 404(B)(1), provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The ticket itself is an ordinary BCPD municipal ticket which lists Monroe's address as 1607 Airline Drive. This is the sort of ticket one might receive for an ordinary traffic violation. It contains a number of check boxes for various traffic offenses and, also, for violations of several misdemeanor statutes and various municipal ordinances. There is an X marked between the check boxes (i.e., not in either box) for "Drinking in *1215 Public" and "D/P Fighting." Neither of these offenses are defined as crimes in the criminal code or the constitution. They appear to be Bossier City municipal offenses. The ticket does not reflect any disposition of the charge.
It is well-settled that a municipal offense is not a crime. La.R.S. 14:7; State v. Wilcoxon, 26,126 (La.App. 2d Cir. 06/22/94), 639 So.2d 385, 390, writ denied, 94-1961 (La. 12/16/94), 648 So.2d 386; State v. Ladner, 619 So.2d 1144 (La.App. 1st Cir.1993), writ denied 625 So.2d 1059 (La.1993). As such, these violations may not be introduced as "other crimes evidence" to impeach the defendant's credibility if he takes the stand. State v. Ramos, 390 So.2d 1262 (La.1980); see now La. C.E. art. 609.1. Similarly municipal offenses are not considered "other crimes evidence" under article 404 B and there is no prohibition against their introduction. In State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.1984), writ denied, 449 So.2d 1347 (La.1984), the court held that "reference to a conviction for a municipal offense is not reference to `another crime' for the same reason that a municipal offense is not a crime for purposes of impeachment" and does not mandate a mistrial.
The instant ticket was not introduced for "other crimes" or impeachment purposes. Indeed, no witness testified to the substance of either of the offenses ambiguously reflected as the subject of the ticket. The ticket was introduced to show a link between defendant Monroe and the Beverly St. residence by virtue of its presence there. Indeed, as defense counsel noted, it only partly served that purpose because it listed the defendant's address as Airline Drive, not Beverly St.
Therefore, the introduction of this evidence was essentially a question of the application of La. C.E. art. 403 regarding relevancy rather than La. C.E. art. 404(B)(1). As such, the trial court is entitled to great latitude in determining whether evidence is more probative than prejudicial. State v. Plater, 26,252 (La.App. 2d Cir. 9/21/94), 643 So.2d 313, 318, writ denied, 94-2608 (La. 02/03/95), 649 So.2d 402. Because the nature of the offense in the ticket was never referred to in testimony and the ticket was relevant as to Monroe's occupancy of the Beverly St. residence, there was no abuse of discretion in admitting it under La. C.E. art. 403.
On appeal, the defendant also argues that the admission of the McElroy Metals time sheet was in error. Despite appellate counsel's apparent argument to the contrary, trial counsel did not object to this document. Even if he had, the admission of that document is purely a question under La. C.E. art. 403 and was properly admitted as evidence that Monroe was more than a casual visitor to the Beverly Street apartment. This assignment of error is without merit.

Mistrial
The jury retired to deliberate at 3:34 p.m. and returned at 4:20 p.m. with guilty verdicts for both defendants. Polling revealed that nine jurors concurred in the guilty verdict for Monroe but three did not. The court then said:
We have three of the jurors who said that the guilty verdict on Mr. Monroe was not in fact their verdict. All right, with regard to that defendant, then, the jury will be ordered to retire and continue their deliberation until ten of their number have concurred with the verdict. All right.
Similarly, in the Martin case, the vote was nine to three. In response, the court stated:
That's also a nine to three verdict. Ladies and gentlemen of the jury, before you can return a verdict in this case, ten of your number must concur. At this time, I'm going to order you go back into deliberations and continue deliberations if you feel that you can do so without violence to your own individual judgment. If it becomes comes to the point that you are no longer able to deliberate with the purpose of reaching a verdict in this matter, you can come back to the court and report that. But at this time, the Court would order that you go back and continue your deliberations.
The jury retired again at 4:30 p.m. and returned at 5:16 p.m. with guilty verdicts for *1216 both defendants. This time, the vote was eleven to one in favor of conviction of Monroe.
At no point during this episode did the defendant request a mistrial. However, he argues on appeal that the court should have declared the jury deadlocked and declared a mistrial. If, upon polling all of the jurors, the number required to find a verdict do not answer "Yes," the jury may be remanded for further deliberation, or the court may declare a mistrial in accordance with La.C.Cr.P. art. 775. La.C.Cr.P. art. 812.
Although a mistrial may be ordered, and in a jury case the jury dismissed, when the jury is unable to agree upon a verdict, the length of time to be afforded a jury for deliberation is a matter within the discretion of the trial judge. La.C.Cr.P. art. 775; State v. Simmons, 414 So.2d 705 (La. 1982). The complexity and severity of the case is an important factor in the determination of what is a reasonable time. There is no requirement that a judge declare a mistrial at the initial sign of trouble. State v. Lowenfield, 495 So.2d 1245 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986).
The record of the proceedings does not indicate that the jury was hopelessly deadlocked and could not reach a verdict. They deliberated for 46 minutes the first time and 46 minutes the second time, which is neither so long as to indicate an unwillingness to deliberate nor so brief as to suggest failure to consider the matter seriously. There is no showing that the court abused its wide discretion by choosing to return the jury to its deliberations rather than declaring a mistrial. This assignment of error is without merit.

Motion for New Trial
Monroe appeals the trial court's denial of his Motion for New Trial asserting trial counsel's dual representation resulted in ineffective assistance of counsel. We note that counsel was retained by the defendants, their defenses were not antagonistic and neither defendant objected to the multiple representation at trial.
In State v. Lobato, 621 So.2d 103, 105 (La.App. 2d Cir.1993), this court set out the law on multiple representation questions presented after conviction:
Multiple representation does not per se result in the ineffective assistance of counsel so as to violate constitutional guarantees unless it gives rise to a conflict of interest. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Where, as here, there has been no objection to multiple representation at trial, a defendant must show an actual conflict of interest adversely affected his counsel's performance in order to establish a claim of ineffective assistance of counsel in violation of U.S. Const. amend VI. Cuyler v. Sullivan, supra.

A reviewing court cannot presume that joint representation and the possibility of a conflict of interest has resulted in ineffective assistance of counsel. State v. Kahey, 436 So.2d 475 (La.1983); State v. Seay, 521 So.2d 1206 (La.App. 2d Cir.1988). In assessing whether a conflict of interest exists, a court must be convinced that the conflict is actual, not merely hypothetical or speculative. McConico v. Alabama, 919 F.2d 1543 (11th Cir.1990). Actual conflicts of interest that adversely affected counsel's performance must be established by specific instances in the record, and the mere possibility of divided loyalties is insufficient proof of actual conflict. United States v. Roth, 860 F.2d 1382 (7th Cir. 1988), cert. denied, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989).
To prove a claim of ineffective assistance of counsel, a defendant must show that his counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment and that he was prejudiced by these errors. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Monroe asserts his trial counsel erred in failing to file a motion to suppress the 33 rocks of crack seized from the lawnmower. Monroe, however, has failed to show how the dual representation affected counsel's decision not to file a motion to suppress or, perhaps more importantly, for what reasons such a motion could have been successful. *1217 Accordingly, his assertion that dual representation resulted in ineffective assistance of counsel is rejected.
Monroe's second argument is that the dual representation prejudiced him by not permitting him to testify and explain the BCPD ticket because this testimony would have incriminated his codefendant. However, he has not stated what sort of testimony would have "explained" the presumably self-explanatory ticket. Monroe's PSI reflects a conviction for battery, a charge of rioting reduced to disturbing the peace to which Monroe pled guilty and a conviction for illegal use of a weapon. This history of past crime would be a much more important factor in the decision to testify than the minor prejudice caused by the ticket. This assignment of error is without merit.

Decree
For the reasons set forth above America Martin's conviction is reversed. The conviction and sentence of Jonathan K. Monroe are affirmed.
CONVICTION AND SENTENCE OF AMERICA RACHEL MARTIN IS REVERSED.
CONVICTION AND SENTENCE OF JONATHAN KEVIN MONROE IS AFFIRMED.
STEWART, Judge, dissenting.
I agree with the majority that the evidence was insufficient to convict America Martin. However, I disagree that the evidence was sufficient to convict Jonathan Monroe of possession of cocaine with intent to distribute.
Although the majority discusses the factors for proof of constructive possession they fail to discuss or apply the factors necessary to support a conviction of possession with intent to distribute. The test for determining whether "intent to distribute" exists in a particular case includes five factors: (1) packaging in a form usually associated with distribution; (2) evidence of other sales or attempted sales by the defendant; (3) a large amount or quantity of the drug such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount was inconsistent with personal use; and (5) the existence of any paraphernalia, such as baggies or scales. State v. House, 325 So.2d 222 (La.1975); State v. Appacrombie, 616 So.2d 285 (La.App. 2 Cir.1993). The majority writes "Due to the open access of all the parties at the gathering that night to the hiding places where the other drugs were found, we discount the sufficiency of the evidence standing alone of those drugs and of Monroe's presence at the large gathering of people." If the majority discounts the drugs hidden in the lawnmower and under the carpeting on the stairs, the one stray rock of crack cocaine found under the stove is the only evidence of "intent to distribute."
Further, the majority errs gravely when stating "All of the evidence together excludes every reasonable hypothesis that Monroe was not in constructive possession of the drugs found in the search and in actual possession of the drugs sold to the CI." (emphasis added). The CI did not testify at trial, nor was any cocaine alleged to have been purchased by the CI introduced at trial. The CI's information merely formed the basis for the search warrant obtained by police. No evidence indicated that the CI identified from whom he made the buy or that the CI implicated Monroe as the seller.
Arguably, the majority fails to demonstrate how the evidence is stronger against Monroe than against Martin as to the possesAppacromsion of the one stray rock. However, it is quite clear that the factors for intent to distribute have not been proven by the state, and at best Monroe is guilty of only simple possession of cocaine.
NOTES
[1] Defendant did not file a motion for post-verdict judgment of acquittal as required by La.C.Cr.P. art. 821; however we will review the sufficiency of the evidence to convict pursuant to our decision in State v. Green, 28,994 (La.App. 2d Cir. 2/26/97), 691 So.2d 1273.