707 So.2d 96 (1998)
STATE of Louisiana, Appellee,
v.
Donald Ray SPENCER, Appellant.
No. 29993-KA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1998.
*98 Wilson Rambo and Peggy J. Sullivan, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Hamilton Stephens Winters, Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and NORRIS and STEWART, JJ.
NORRIS, Judge.
Beginning in October of 1995, the Metro Narcotics division of the Monroe Police Department commenced an undercover narcotics investigation which focused on illicit drug sales at a motel in Monroe. Shortly thereafter, an unidentified male known only as Don became the target of the investigation.
Equipped with audio recording devices and Metro "buy" money,[1] undercover officer Jeremy Taylor purchased various amounts of cocaine from Don in room 18 of the motel on October 5 and 17, 1995 and on January 17, 1996. These purchases were conducted in the form of a "buy walk."[2] Meanwhile, Detective Mark Little, who opened the investigation, was able to identify the person in room 18 selling the cocaine as Donald Ray Spencer, defendant, and obtained a photo of Spencer from a probation file.
Following the "buy walk" on January 17, Taylor identified Spencer in a photo line-up as the person who had sold him the drugs on the three previous occasions. On January 30, 1996, undercover reserve officer Harry Caine replaced Taylor and went to room 18 to meet with Spencer to buy cocaine. Caine knocked on the door; a female later identified as Virginia Moore, Spencer's girlfriend, opened the door. (Taylor had testified that Virginia was in room 18 during the October 17 drug transaction.) Spencer was in the room but did not sell Caine any drugs because he did not know Caine. Caine walked back to his car and was followed by Virginia who told him, "Well, you just have to understand our position." (At trial, Virginia testified that she was acting on her own and that Spencer did not know that she had sold the drug to Caine.) Nevertheless, she handed him a piece of cocaine and he gave her a twenty dollar bill.
Later that day, a search and an arrest warrant were executed. Neither Spencer nor Virginia was present in room 18 when the officers obtained entry. In fact, as Officer Hereford and Nappier returned to their vehicles to secure equipment, Spencer walked upon the scene. He was carrying a box of Popeye's Fried Chicken and a Popeye's cup. Spencer placed the box and cup on the ground to allow the officers to perform a "pat down" search. Officer Nappier then escorted him to Detective Little, while Officer Hereford retrieved the box and drinking cup, removed the lid from the cup, and found three loose rocks and eight packaged rocks of cocaine. Spencer was subsequently arrested.
*99 Spencer was charged by bill of information[3] with the following six counts: (Count # 1) Distribution of Cocaine on October 5, 1995; (Count # 2) Distribution of Cocaine on October 17, 1995; (Count # 3) Distribution of Cocaine on January 17, 1996; (Count # 4) Distribution of Cocaine on January 30, 1996; (Count # 5) Conspiracy to distribute cocaine on January 30, 1996; and (Count # 6) Possession of Cocaine with intent to distribute on January 30, 1996.
Spencer proceeded to jury trial. He was found guilty on counts one, two, three and six; and found not guilty on counts four and five. The court later sentenced him to 20 years at hard labor on each of the counts, sentences to be served concurrently with each other but consecutively as to other sentences he may be serving. Credit was given for time served.
Spencer now appeals raising four[4] assignments of error: (1) The evidence herein is legally insufficient to support the verdicts of distribution of cocaine and possession of cocaine with intent to distribute; (2) the court erred in imposing an unduly harsh and excessive sentence under these circumstances and failed to sufficiently articulate and consider La.C.Cr.P. art. 894.1 guidelines as well as certain mitigating factors present herein in fashioning a sentence; (3) the court erred in dividing ex parte the pool of prospective jurors between two different courtrooms and trials without notice to and the consent of the defendant. Further, the trial court erred in removing from the selection process one-half of the names of prospective jurors who were present and listening to voir dire in the other courtroom so that those names were not available to be drawn in a random manner from the prospective jurors in defendant's trial; and (4) the court erred in denying defendant's motion to Reconsider Sentence. For the following reasons, we affirm.

SUFFICIENCY OF THE EVIDENCE
When a defendant challenges both the sufficiency of evidence and one or more other trial errors, the appellate court should first determine the sufficiency challenge. State v. Hearold, 603 So.2d 731 (La.1992); State v. Evans, 29, 675(6) (La.App.2d Cir. 9/24/97), 700 So.2d 1039. The constitutional standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.), writ denied 619 So.2d 573 (1993). An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Appacrombie, 616 So.2d 285 (La.App. 2d Cir.), writ denied 623 So.2d 1302 (La.1993).
Although Spencer assigns as error an insufficient amount of evidence required to convict on all counts, his argument is only directed to Count # 6, possession of cocaine with intent to distribute, in contravention of La. R.S. 40:967.
*100 To support a conviction for possession with intent to distribute, the state must prove (1) possession of the controlled dangerous substance and (2) specific intent to distribute it. La. R.S. 40:967 A(1); State v. Elzie, 343 So.2d 712 (La.1977); State v. Daniels, supra. Because Spencer has further limited his argument to the intent element of § 967, we likewise limit our review.
Intent is a fact which may be inferred from circumstantial evidence. State v. Hall, 602 So.2d 256 (La.App. 2d Cir.), writ denied 609 So.2d 254 (1992). Factors which are useful in determining whether the circumstances are sufficient to prove an intent to distribute cocaine or a controlled dangerous substance ("CDS") include (1) whether the defendant ever distributed or attempted to distribute a CDS; (2) whether the CDS was in a form usually associated with distribution to others; (3) whether the amount was such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's possession was inconsistent with personal use only; and (5) the presence of paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222 (La.1975); State v. Hall, supra. Testimony of street value and dosage units of the drug is also relevant to the issue of intent. State v. Appacrombie, supra.
The evidence adduced at trial showed that on January 30, Spencer had in his possession three loose rocks of cocaine and an additional eight rocks which were packaged in a plastic bag. Detective Mark Little testified that the street value of the cocaine found in the Popeye's cup was between $230 and $370. He also testified that the search of Spencer's motel room revealed no paraphernalia which would be consistent with the personal use of cocaine.
Furthermore, the trier of fact had already listened to three prior audio recordings of Spencer selling cocaine to undercover police officers on three different occasions from this same motel room. And although Spencer was not on the fourth and final recording made earlier on January 30, twenty dollars in Metro "buy money" given by Officer Caine to Virginia Moore was later found on Spencer, in addition to $488. Moreover, Virginia testified that Spencer did not work. It would not be unreasonable for a rational trier of fact to conclude beyond a reasonable doubt that all of these circumstances supplied the element of intent to distribute the cocaine. In fact, a cursory review of the record reveals that a majority of the House factors have been satisfied. Although there was no testimony that the amount found on Spencer created a presumption of an intent to distribute or was inconsistent with personal use, the officers did testify that Spencer, at the time of his arrest, neither had on his person nor in his motel room the paraphernalia required to personally smoke the cocaine, an additional factor not enumerated in the House analysis.
After viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt that Spencer intended to distribute the cocaine seized from the Popeye's cup he was carrying. The first assignment does not present reversible error.

EXCESSIVE SENTENCE
By his second assignment of error, Spencer challenges his sentence as excessive and the trial court's reasoning as inadequate. Spencer timely filed a motion to reconsider on these grounds, but the motion was denied. Spencer challenges the denial of that motion in his fourth assignment of error.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La. 1983); State v. Tomlinson, 29, 355 (La. App.2d Cir. 2/26/97), 690 So.2d 946. The test imposed by the reviewing court in determining the excessiveness of a sentence is twopronged. First, the record must show that the trial court complied with art. 894.1. State v. Tomlinson, supra. The record must show that the trial court took cognizance of the criteria set forth in art. 894.1, although it is not necessary that the trial court list every aggravating and mitigating factor. State v. Smith, 433 So.2d 688 (La.1983). The important elements which should be considered are *101 the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Mims, 550 So.2d 760 (La.App. 2d Cir.1989). In setting out the factual basis for its sentence, the trial court ensures that the sentence is tailored to the offender and the particular offense. State v. Hogan, 480 So.2d 288 (La.1985). Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with article 894.1. State v. Lanclos, 419 So.2d 475 (La.1982).
Spencer's argument that article 894.1 was not complied with is without merit. Prior to imposing sentence, Spencer's attorney stated that he had reviewed the presentence investigation report ("PSI") with the judge and both himself and Spencer had been made aware of the sentence to be imposed. Moreover, the judge told Spencer of a previous conversation informing his attorney of the sentence to be imposed. For the record, the judge stated that he read the PSI and noted the "extensive" criminal history including the particular offenses and their locations and dates, that fact that the crimes took place while Spencer was on parole supervision, and his age. The judge even stated that because of the prior felony convictions, "enough is enough." The court then sentenced Spencer to serve 20 years at hard labor on each of the four counts, to be served concurrently with each other but consecutively to any other terms which he was currently serving or may be serving. Under La. R.S. 40:967 B(1), possession of cocaine with intent to distribute (count # 6) and distribution of cocaine (counts # 1-3) each carries a maximum term of imprisonment of thirty years. The brevity of this sentencing colloquy does not equate with noncompliance with article 894.1.
Second, it must be determined whether the sentence imposed is too severe given the circumstances of the case and the defendant's background. State v. Stepp, 28, 868 (La.App.2d Cir. 12/11/96), 686 So.2d 76, writ denied 97-0410 (La.6/30/97), 696 So.2d 1006. If the sentence is a needless imposition of pain and suffering and is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, the sentence is considered unconstitutionally excessive as violative of La. Const. Art. 1, § 20. Id.
Not only was this third time felony offender spared the maximum sentence, by being sentenced to serve his sentences concurrently, his exposure was reduced from 120 years to 20 years. Despite the sentence, the PSI stated that Spencer was a multiple felony offender and noted that he performed poorly under parole supervision. While Spencer alleges that the sentencing judge failed to consider mitigating circumstances, he also does not enunciate what mitigating factors would have affected the sentence had they been considered. The sentence does not shock the sense of justice and is not purposeless or needless. Thus, Spencer's assignment of errors as to excessive sentence, noncompliance with article 894.1, and in denying the motion to reconsider sentence are all without merit.

DIVISION EX PARTE OF PROSPECTIVE JURY POOL
By his third assignment of error, Spencer argues that the trial court erred in dividing the pool of prospective jurors ex parte without providing defendant notice and acquiring his consent, and compounded its error by removing from the selection process the names of prospective jurors who were selected to participate in a civil trial voir dire occurring concurrently with the criminal trial voir dire.
Prior to the commencement of trial, Spencer's attorney objected to the jury venire selection process. Both a civil and the instant criminal jury selection process were being conducted simultaneously. Pursuant to what Ouachita Parish Sheriff's Office Sergeant Renee Shaw described as a customary procedure, all prospective jurors were placed in a vacant courtroom, number 5. The civil judge in courtroom number 3 instructed Shaw and a co-employee Cissy Hampton to draw 32 names from the jury pool box and those people whose names were drawn were then *102 taken to the civil jury courtroom for voir dire questioning. Of those 32 people, 14 were selected to be questioned while the remainder sat in the courtroom. Because the 32 slips were taken out of the jury pool box, those names were unavailable initially to be drawn for use in Spencer's criminal trial. However, prospective jurors excused from the civil trial were sent to be utilized as prospective jurors in the criminal trial. Sgt. Shaw testified that the 32 names were randomly drawn, without regard to race. The court relied on La.C.Cr.P. art. 784 for the authority to use discretion in selecting a jury panel, and thus overruled the objection.
Defense counsel reiterated this argument in an oral motion for mistrial, objecting the jury selection method. However, the court denied the motion as well.
The Code of Criminal Procedure provides that in selecting the panel of jurors, the names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court. La.C.Cr.P. art. 784. A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from venires solely on the basis of race. La.C.Cr.P. art. 419. The Louisiana Supreme Court has addressed this issue in State v. Bradford, 298 So.2d 781 (La.1974). In Bradford, the defendant argued that as a result of sharing the jury venire between two courtrooms, he was denied a jury representing a cross-section of the community. Although the court found that the procedure used was not contemplated by La.C.Cr.P. art. 418, the court held that absent a showing of actual prejudice, mere sharing of the jury venire between two sections of trial court did not constitute reversible error. See also, State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992). The defendant has the burden of establishing fraud, an actual prejudice, or irreparable injury in the jury selection process. State v. Roy, 496 So.2d 583 (La.App. 1st Cir.1986), writ denied 501 So.2d 228 (1987); State v. Bradford supra,
In the instant case, Spencer argues that the selection of the 32 jury pool members outside of court violated the mandates of article 784. He also argues that there are no local rules to authorize the sharing of jury venire members, and that he was denied the opportunity to question the absent members. Although there are no applicable local rules, Sgt. Shaw did testify that the procedure used was pursuant to normal practice, and that the names were withdrawn from the jury venire pool box randomly and without regard to race. A defendant in a criminal jury trial has no right to a trial by a particular jury or juror, but only to a trial by a competent, impartial jury. State v. Crocker, 551 So.2d 707 (La.App. 1st Cir.1989). Spencer has not established that any fraud was perpetrated by Sgt. Shaw or the civil or criminal court judges, or that he suffered any actual prejudice, or irreparable injury. Thus, this assignment of error has no merit.

CONCLUSION
We have scanned the record for errors patent and find none. Because of the foregoing reasons, the convictions and sentences are affirmed. The case is remanded for the sole and limited purpose of ensuring compliance with La.C.Cr.P. art. 871.
CONVICTIONS AND SENTENCES AFFIRMED; REMANDED FOR COMPLIANCE WITH LA. C.CR.P. ART. 871 B.
NOTES
[1] Money which has been previously photocopied for identification purposes and used in undercover operations.
[2] A situation where an undercover officer makes a drug purchase and does not immediately arrest the seller, i.e., the officer walks away.
[3] Spencer's fingerprints have not been affixed to the bill of information in compliance with La. C.Cr.P. art. 871B. We therefore remand for the sole and limited purpose to ensure compliance. State v. Henton, 28, 576 (La.App.2d Cir. 9/25/96), 682 So.2d 777, writ denied 96-2590 (La.3/27/97), 692 So.2d 391.
[4] At the trial, defendant motioned to quash count # 5 on the bill of information for reasons not relevant to this appeal, and alternatively to quash the entire bill with prejudice based upon the jury pool selection process. A fifth assignment of error, denying defendant's motion to quash, is abandoned and rendered moot insofar it impacted upon count # 5. The portion of the motion to quash concerning the jury selection process is still viable and will be consolidated with the third assignment of error.