STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-100

STATE OF LOUISIANA

VERSUS

ROBERT LEE SAMUEL

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 285,772
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and James T. Genovese, Judges.

AFFIRMED.

Cooks, J., concurs in the result.

Dmitrc I. Burnes
Post Office Box 650
Alexandria, Louisiana 71309-0650
(318) 448-0482
COUNSEL FOR DEFENDANT/APPELLANT:
    Robert Lee Samuel

James D. Downs
District Attorney - Ninth Judicial District
ADA Loren M. Lampert
Post Office Drawer 1472
Alexandria, Louisiana 71309
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

**GENOVESE, Judge.**

The Defendant, Robert Lee Samuel, was charged by bill of information on February 7, 2007, with one count of possession with intent to distribute promethezine with codeine, a controlled dangerous substance (CDS) listed in Schedule V of Title 40 of the Louisiana Revised Statues, in violation of La.R.S. 40:969(A)(1)(G),[1] and one count of possession of hydrocodone, a Schedule III CDS, in violation of La.R.S. 40:968(C). On August 8, 2007, after a trial by jury, the Defendant was found guilty on both counts. On October 19, 2007, the Defendant was sentenced to five years at hard labor for his conviction of possession with intent to distribute promethezine with codeine and five years at hard labor for his conviction of possession of hydrocodone, with his sentences to run concurrently. On the same day, the trial court denied the Defendant's motion for a new trial.

Thereafter, the State filed a habitual offender bill, alleging that the Defendant was a third felony offender. In response, the Defendant filed an objection and motion to quash the habitual offender bill. The trial court held habitual offender proceedings on November 26, 2007, at which time the court adjudicated the Defendant as a third felony habitual offender, vacated his five-year sentence for possession with intent to distribute promethezine with codeine, and sentenced him to ten years at hard labor.

On December 4, 2007, the Defendant filed a written notice of appeal with the trial court. The Defendant is now before this court on appeal, alleging the following five assignments of error:

> 1. The evidence presented at trial by the State was insufficient by failing to show that the defendant had knowledge of the contents of the package.

---

[1]This citation error will be discussed in the Errors Patent section of this opinion.

2. The evidence presented at trial by the State was insufficient by failing to show that the defendant had intent to distribute.

3. The instructions given by the trial court to the jury were incorrect and confused the jury and violated defendant's rights to a fair trial and due process of law under both the [United States] and Louisiana Constitutions.

4. The trial court erred by not granting the oral motion for continuance made by defendant's attorney.

5. The trial court erred in finding defendant a third felony offender for the purposes of the habitual offender bill of information.

## FACTS

The following facts were adduced from the record in this case. Shortly before August 11, 2006, the United States Postal Service (USPS) in Los Angeles, California, intercepted a suspicious package addressed to a Janice McGee at 101 Hope Street, Alexandria, Louisiana. The package was burst on one end, and illegal narcotics were identified. Thereafter, the USPS set up a controlled delivery in conjunction with the New Orleans USPS Office and the Louisiana State Police Narcotics Bureau wherein the package was to be delivered to the Hope Street address in Alexandria.

On August 11, 2006, the USPS and the Louisiana State Police conducted the controlled delivery at 101 Hope Street, Alexandria, Louisiana. During the controlled delivery, the USPS Inspector delivered the package to a young black female who was later identified as Donesha Hayes (the Defendant's 15-year-old step-daughter), who signed for the package using the name Janice Mintz.

Prior to the delivery of the package, the Defendant told Donesha to be expecting a package and to sign for it using whatever name was on the address label. After signing for the package, and while the Defendant was in his bedroom, Donesha took it to the Defendant's bedroom and placed it next to him on his bed.

2

Shortly after the controlled delivery, law enforcement officers executed a search warrant at the residence. Upon execution of the search warrant, the Defendant was discovered in his bedroom, and the package was on the floor next to the bed, unopened. The package was recovered by law enforcement officers, and its contents were determined to be 15 pints of codeine and 70 hydrocodone pills. Thereafter, the Defendant was placed under arrest.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are two errors patent.

First, there is an error in the bill of information. Louisiana Code of Criminal Procedure Article 464 states:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

The bill of information (bill) contains an error in the citation for possession with intent to distribute codeine. The bill erroneously refers to "La.R.S. 40:969A1G" as the citation for this offense; however, the correct citation for this offense is La.R.S. 40:970(A)(1). Nevertheless, the bill correctly refers to the drug as contained in Schedule V, whereas La.R.S. 40:969 contains offenses related to drugs listed in Schedule IV. Additionally, the elements of the crime are correctly set forth in the bill. Furthermore, there is nothing on the face of the record indicating that this citation error misled the Defendant to his prejudice, and neither the minutes nor the pleadings

3

indicate that the Defendant alleged any prejudice prior to trial. Accordingly, we find this error to be harmless. *See State v. Poche*, 05-1042 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225, and *State v. Roberts*, 06-765 (La.App. 3 Cir. 1/17/07), 947 So.2d 208, *writ denied*, 07-362 (La. 10/5/07), 964 So.2d 938.

Next, there is an error regarding the habitual offender proceeding. We note that the record does not indicate that the Defendant was advised of his right to remain silent.

In *State v. Coleman,* 96-525, pp. 12-13 (La.App. 3 Cir. 10/7/98), 720 So.2d 381, 387, this court explained, in pertinent part:

> Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, in *State v. Johnson*, 432 So.2d 815 (La.1983), *writ granted on other grounds*, 438 So.2d 1113 (La.1983); *appeal after remand*, 457 So.2d 1251 (La.App. 1 Cir.1984), *appeal after remand*, 471 So.2d 1041 (La.App. 1 Cir.1985), the Louisiana Supreme Court held this statute clearly recognizes the defendant has the right to remain silent, and the statute implicitly provided defendant should be advised by the court of his right to remain silent. The court in *Johnson*, relying on *State v. Martin*, 427 So.2d 1182 (La.1983), further stated La.R.S. 15:529.1(D) specifically provides defendant shall be advised of his right to a formal hearing and to demand that the state prove its case.

This court has found such an error to be harmless when the defendant is adjudicated a habitual offender after a full hearing, and the defendant does not testify or acknowledge his status as a habitual offender. *See State v. Alexander*, 05-276, 05-277 (La.App. 3 Cir. 11/2/05), 916 So.2d 303.

However, in the present case, the Defendant did testify, acknowledging his prior convictions.

In *State v. Payne,* 94-1628, pp. 2-8 (La.App. 3 Cir. 5/22/96), 677 So.2d 527, 528-30, on error patent review, this court explained in pertinent part:

> In *State v. Johnson*, 432 So.2d 815 (La.1983), defendant was determined by the trial court to be a habitual offender and sentenced to

4

twenty-four years at hard labor. At the hearing, defendant pled *not guilty*. No evidence was presented by the state that defendant was the same person who had been previously convicted. The trial court, over the objection of counsel, *compelled* defendant to testify. The supreme court reversed and vacated the sentence. The court stated:

> This section of the statute clearly recognizes that the defendant, if he chooses, has the right to remain silent. Once the defendant chooses to remain silent[,] the state must then by competent evidence prove the elements of R.S.15:529.1 before the defendant can be sentenced as an [sic] habitual offender. Before the defendant chooses to acknowledge or confess in open court that he has been previously convicted of a felony, the statute requires that he first be cautioned by the trial court as to his rights. R.S. 15:529.1(D) specifically provides that defendant be advised by the court of his right to a "formal hearing" and to have the state prove its case. *State v. Martin*, 427 So.2d 1182 (La.1983). Further, this section implicitly provides that the defendant should be advised, by the court, of his statutory right to remain silent.

*Id*. at 817.

More recently, in *State v. Harris*, 654 So.2d 680, the supreme court, in an application for post-conviction relief, stated:

> Admissions of identity at a multiple offender hearing implicate the defendant's Fifth Amendment privilege against self-incrimination. *State v. Johnson*, 432 So.2d 815 (La.1983). Nevertheless, multiple offender proceedings "simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt or innocence." *State v. Martin*, 427 So.2d 1182, 1185 (La.1983). This Court has therefore declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the *Boykin* colloquy which must accompany a valid plea of guilty. *Id*., 427 So.2d at 1185, n. 7. In the absence of any allegation or showing that the admission was involuntary, *compare State v. Johnson, supra,* the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental fairness and due process of law. *See, Holloway v. Lynaugh*, 838 F.2d 792 (5th Cir.), [*cert. denied*], 488 U.S. 838, 109 S.Ct. 104, 102 L.Ed.2d 80 (1988); *State v. Firmin*, 522 So.2d 1181 (La.App. 4th Cir.), [*writ denied*], 532 So.2d 759 (La.1988).

5

In the case *sub judice*, unlike in *Harris*, no independent evidence was introduced by the state to prove defendant was the same person previously convicted of a predicate felony. However, our review of the record convinces us that "the proceedings as a whole accorded the (defendant) fundamental fairness and due process."

. . . .

There have been no allegations or showing that the admission was involuntary. Defendant was represented by counsel at the hearing, he was informed of the allegations in the multiple offender bill[,] and he was advised of his right to a hearing wherein the state would have the burden of proving he was the same person previously convicted of the predicate offense. Furthermore, the admission was part of a plea agreement and defendant was fully apprised of the sentence he was to receive.

In the habitual offender bill of information, the State charged the Defendant with having been convicted of the prior crimes of theft, district court docket number 228,540, in Rapides Parish, and simple robbery, district court docket number 230,111, in Rapides Parish. The Defendant was adjudicated a habitual offender after a full hearing. At the beginning of the habitual offender proceeding, the Defendant's fingerprints were taken, and the State introduced, without objection by the Defendant, certified copies of the plea colloquies in district court docket numbers 228,540 and 230,111. Thereafter, the State called an investigator for the Rapides Parish District Attorney's office, Ray Keith Delcolym, to testify. Mr. Delcolym was accepted by the trial court, without objection, as an expert in the field of fingerprint identification. Mr. Delcolym compared the Defendant's fingerprints, which were taken at the beginning of the proceeding, to the fingerprints contained on the certified copies of the bills of information in district court docket numbers 228,540 and 230,111, and identified the Defendant as the person that was convicted of the previous crimes. The Defendant's attorney then cross-examined the expert witness. After the State rested, the Defendant, on his own volition, took the stand and did not dispute that he was

6

convicted of the prior convictions.

We find that, although the Defendant acknowledged his prior convictions without first being advised of his right to remain silent, unlike in *Johnson*, the Defendant's testimony was voluntary; and, the Defendant was represented by counsel. Additionally, a full habitual offender hearing was held. Accordingly, we find that the trial court's failure to advise the Defendant of his right to remain silent was harmless error in this instance and that he was afforded a fair hearing.[2]

## ASSIGNMENTS OF ERROR NOS. 1 & 2:

As the Defendant's first two assignments of error relate to sufficiency of evidence, we will discuss both of these errors together. The Defendant alleges that there was insufficient evidence to show that he had knowledge of the contents of the package containing the illicit drugs or to show that he had the intent to distribute them.

In *State v. Touchet,* 04-1027, pp. 1-2 (La.App. 3 Cir. 3/9/05), 897 So.2d 900, 902, this court stated:

> With regard to sufficiency of the evidence, this court set forth as follows in *State v. Lambert,* 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27:
>
> > When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel.*

---

[2]In *State v. Carmouche*, an unpublished opinion bearing docket number 07-911 (La.App. 3 Cir. 1/30/08), we recognized as an error patent the failure of the trial court to advise the defendant, who was charged as a habitual offender, of his right to remain silent and his right to have the State prove its case against him. The record indicated that the Defendant was adjudicated a habitual offender after a full hearing was held, that the Defendant's testimony was voluntary, and that the Defendant was represented by counsel. Consequently, we found that the error was harmless and that the Defendant was afforded a fair hearing.

7

> *Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King,* 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In order for this court to affirm a conviction, the record must reflect that the State has satisfied this burden of proving the elements of the crime beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

The Defendant was convicted of one count of possession with intent to distribute a Schedule V CDS, in violation of La.R.S. 40:970(A)(1), which states, "[e]xcept as authorized by this part, it shall be unlawful for any person knowingly or intentionally: (1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule V." The other offense for which the Defendant was convicted was possession of a Schedule III CDS, in violation of La.R.S. 40:968(C), which states, in pertinent part:

> It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule III unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, or as provided in R.S. 40:978 or R.S. 40:1239, while acting in the course of his professional practice or except as otherwise authorized by this Part.

To find the Defendant guilty of the first offense, possession with intent to distribute a Schedule V CDS, the State had to prove beyond a reasonable doubt that the Defendant possessed a Schedule V CDS and intended to distribute same. In order to find the Defendant guilty of the second offense, possession of a Schedule III CDS,

the State had to prove beyond a reasonable doubt that the Defendant possessed a Schedule III CDS.

The Defendant argues that the State failed to prove that he had knowledge the package that was delivered to his home contained drugs; and, therefore, there was insufficient evidence to find him guilty of possession or possession with intent to distribute. The second argument made by the Defendant is that the State's case is entirely circumstantial; and, thus, he could not be convicted unless every other reasonable hypothesis of innocence is excluded. We find these assignments of error to be without merit.

We note that the Defendant offers no jurisprudence to support any of his arguments. In order to prove the possession with intent to distribute offense, the State had to prove that the Defendant was: (1) in possession of the Schedule V CDS; and (2) had intent to distribute the same. For the possession of a Schedule III CDS offense, the State only had to prove the Defendant possessed a Schedule III CDS.

It is well-settled that constructive possession of narcotics may suffice to find a defendant guilty of possession of said narcotics. *State v. Lathers*, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881. In *Lathers*, the court affirmed a possession with intent to distribute conviction where, subsequent to the execution of a search warrant, law enforcement officers discovered a bag containing marijuana on the bed where the defendant had been sleeping. In the instant case, testimony was elicited at trial that the package containing the narcotics was delivered and placed on the bed where the Defendant was sleeping. Moreover, testimony was offered by State Trooper Keith Nugent, who testified that the Defendant confessed that the package was his. Nugent interviewed suspects on the day in question. Pursuant to *Lathers*, and in conjunction

9

with the Defendant's confession, we find that the State clearly provided sufficient evidence to prove that the Defendant possessed the narcotics at issue.

With respect to the intent to distribute element of the Defendant's offense, the State was required to prove beyond a reasonable doubt that he had the intent to distribute the Schedule V CDS in his possession. In *State v. Spencer*, 29,993, pp. 4-5 (La.App 2 Cir. 1/21/98), 707 So.2d 96, 100, *writ denied*, 98-627 (La. 8/28/98), 722 So.2d 294, the court discussed intent as it related to the distribution of narcotics and stated:

> Intent is a fact which may be inferred from circumstantial evidence. *State v. Hall*, 602 So.2d 256 (La.App. 2d Cir.), *writ denied* 609 So.2d 254 (1992). Factors which are useful in determining whether the circumstances are sufficient to prove an intent to distribute cocaine or a controlled dangerous substance ("CDS") include (1) whether the defendant ever distributed or attempted to distribute a CDS; (2) whether the CDS was in a form usually associated with distribution to others; (3) whether the amount was such as to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's possession was inconsistent with personal use only; and (5) the presence of paraphernalia, such as baggies or scales, evidencing an intent to distribute. *State v. House*, 325 So.2d 222 (La.1975); *State v. Hall, supra*. Testimony of street value and dosage units of the drug is also relevant to the issue of intent. *State v. Appacrombie*, [616 So.2d 285 (La.App. 2 Cir.), *writ denied*, 623 So.2d 1302 (La.1993)].

In the instant case, evidence was presented at trial showing that the package containing the narcotics included 15 bottles of codeine. Moreover, evidence was introduced at trial that each bottle contained 16 ounces of codeine with a street value between $20.00 and $40.00 per ounce. In light of *Spencer* and *House*, and considering the fact that the defendant had in his possession 15 pints of codeine with a street value between $4,800.00 and $9,600.00, we find that the presumption to distribute could be inferred by a reasonable trier of fact. Accordingly, sufficient evidence was presented at trial to find the Defendant guilty of the offense of

10

possession with intent to distribute a Schedule V CDS.

With respect to the possession of a Schedule III CDS, our previous discussion of *Lathers* regarding constructive possession, in conjunction with the Defendant's admission that the package containing the Schedule III CDS was his, is sufficient to show Defendant's guilt of possession. Accordingly, Defendant's allegations of insufficiency of evidence with respect to both convictions are without merit.

**ASSIGNMENT OF ERROR NO. 3:**

In his third assignment of error, the Defendant alleges that the trial court erred in its issuance of jury instructions, thus confusing the jury and violating the Defendant's rights to a fair trial and due process.

Specifically, the Defendant alleges that the trial court erred when it instructed the jury that a responsive verdict for possession with intent to distribute a Schedule V CDS was guilty of attempted possession of a Schedule III CDS. Our review of the jurisprudence associated with responsive verdicts, as outlined in La.Code Crim.P. art. 814, confirms the Defendant's allegation that attempted possession of a Schedule III CDS is not a responsive verdict for possession with intent to distribute a Schedule V CDS. However, our review of the trial transcript reveals that the Defendant failed to object to the improper jury instruction at the time it was given. Louisiana Code of Criminal Procedure Article 841(A) states, in pertinent part: "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." *See State v. Collor*, 99-175 (La.App. 4 Cir. 4/26/00), 762 So.2d 96, *writ denied*, 00-1487 (La. 3/9/01), 786 So.2d 116, where the appellate court held that the defendant waived his right to challenge the fact that the jury was allowed to take a transcript of his confession into deliberations because he failed to contemporaneously object.

11

In the instant matter, because the Defendant failed to contemporaneously object to the improper jury instruction, he is precluded from arguing on appeal that the erroneous instruction was error. Accordingly, we find that the Defendant failed to preserve his right of review of this assignment of error.

**ASSIGNMENT OF ERROR NO. 4:**

In his fourth assignment of error, the Defendant alleges that the trial court erred in denying his motion for continuance after the jury had been selected, but prior to opening arguments.

In the instant matter, after the jury was selected, but prior to opening arguments, the Defendant requested a continuance due to the discovery of new evidence. The newly discovered evidence was purportedly provided by the Defendant's wife, Renee Marie Samuel, who, on the evening prior to the commencement of trial, advised defense counsel that her husband had received a Social Security check. The Defendant alleges that a continuance would have given him the opportunity to withdraw his plea of not guilty and enter a plea of not guilty by reason of insanity, file a motion to suppress certain statements made by the Defendant as such statements were allegedly made under duress, and file a motion in limine to preclude the use of any statements made by the Defendant. The trial court denied the motion.

It is well-settled jurisprudence that the granting of a continuance is within the discretion of the trial court. *State v. Gipson*, 28,113 (La.App. 2 Cir. 6/26/96), 677 So.2d 544, *writ denied*, 96-2303 (La. 1/31/97), 687 So.2d 402. Moreover, on appellate review, the denial of a continuance by the trial court should not be disturbed without a showing of abuse of discretion and a showing of specific prejudice. *See*

12

*State v. Bartley,* 03-1382 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, *writ denied*, 04-1055 (La. 10/1/04), 883 So.2d 1006.

In the instant case, the Defendant fails to specifically allege or provide any proof of how he was prejudiced by the trial court's denial of a continuance. Because the granting of a continuance is within the discretion of the trial court, and because the Defendant failed to specifically allege how he was prejudiced by the trial court's ruling, we find that the trial court did not err in denying the continuance. Accordingly, this assignment of error is without merit.

**ASSIGNMENT OF ERROR NO. 5:**

In his fifth assignment of error, the Defendant alleges that the trial court erred in adjudicating him as a third felony offender. In response to the filing of the habitual offender bill, the Defendant filed an objection and motion to quash said bill. In his motion to quash, the Defendant alleges that his date of release from the Department of Correction ("DOC") for his second felony occurred on November 23, 1994; and, based on this date, the ten-year cleansing period had elapsed; and, therefore, the state was precluded from adjudicating him as a third felony habitual offender.

However, our review of the habitual offender proceedings transcript reveals that the Defendant was released from incarceration on November 23, 1994, but did not reveal that he was completely released from the DOC on this date. *See State v. Davis*, 41,245 (La.App. 2 Cir. 8/9/06), 937 So.2d 5, where the court held that the cleansing period under the habitual offender statute begins to run from the date that a defendant is actually discharged from state custody and supervision of the DOC.

At the habitual offender proceedings, the State introduced evidence of the Defendant's prior felony convictions through introduction of copies of the clerk's

13

records. The Defendant's first felony conviction, docket number 228,540, indicates that on August 17, 1990, he pled guilty to two counts of theft of goods between $100.00 and $500.00; and, in accordance with the terms of his plea agreement, he was placed on supervised probation for two years and sentenced to two months in the parish prison. The second felony conviction, docket number 230,111, indicates that on July 23, 1991, the Defendant pled guilty to simple robbery; and, in accordance with his plea agreement, the Defendant was sentenced to seven years at hard labor. Also, on July 23, 1991, the Defendant's supervised probation for the theft charge was revoked, and a two-year sentence was imposed and ordered to be served concurrently with the sentence for simple robbery.

The following colloquy occurred between the District Attorney, Mr. Lampert, defense counsel, Mr. Burns, the trial court, and the Defendant ("Witness") at the habitual offender proceedings:

BY MR. LAMPERT:

Q      You were sentenced to seven years on that Simple Robbery charge, when you plead guilty to Simple Robbery, correct?

A      That's correct.

Q      And, then you were actually released from custody in 1994?

A      I was released from the halfway house in 1994.

Q      Correct.

A      Yes, sir.

Q      Which is how many years after you started serving?

A      It's been fourteen years since I've been out.

Q      No, no, listen to me. You plead guilty in 1991, when in August or July of 1991, right?

A      I went to prison in 1991; is that what you're saying?

Q      All right.  July 23rd, I think.  Was that right?

BY THE COURT:

No, it says - - that was the date of the  - -

BY THE WITNESS:

I was released in July, on the 23rd.

BY MR. LAMPERT:

When did you go to prison?  When did you plead guilty?

A      July 23rd.

Q      All right.  And, you got seven years?

A      I got seven years.

Q      You went to prison and was [sic] released from custody in November of 1994?

A      I was released in 19 - - November 23, 1994.

Q      Which is a little over three years from you going to prison, right?

A      I don't understand what your saying.

BY THE COURT:

You were sentenced in 1991; you were released in 1994, so that's about three years from the year of when you plead guilty?

BY THE WITNESS:

Yes, yes.

BY THE COURT:

But you got a seven year sentence is his question?

BY THE DEFENDANT:

Yes, that was three and a half years.

15

FURTHER EXAMINATION BY MR. LAMPERT:

Q       So, you did about half of the time of your seven years, you did about half of that in prison?

A       Yes.

Q       The remaining three and a half years you were on parole?

A       Yes, I was.

BY MR. LAMPERT:

Nothing further.

BY MR. BURNS:

One question, Your Honor.

BY THE COURT:

All right.

## *REDIRECT EXAMINATION*

BY MR. BURNS:

Q       And, with respect to the theft charge, you did all of the time on that, you didn't owe them anymore when you were released on it, released from the halfway house?

A       No sir.

BY MR. BURNS:

Thank you.

BY THE COURT:

So, you would have been on parole until November of '97, would have been three years, and that would have been November - - I mean May of '98, somewhere around there, you were released from paroled [sic]?

BY THE WITNESS:

Yes.

In cases where more than ten years has elapsed between release from DOC for a predicate felony and commission of a felony sought to be enhanced pursuant to La.R.S. 15:529.1, the State has the burden of proof that the ten-year cleansing period has not elapsed. *State v. Thomas*, 05-2210 (La.App. 1 Cir. 6/9/06), 938 So.2d 168, *writ denied*, 06-2403 (La. 4/27/07), 955 So.2d 683. *See also Davis*, 937 So.2d 5. "For a defendant who has been released from custody on parole, [his] date of discharge from parole supervision is equated with the expiration of the maximum sentence" for purposes of the habitual offender statute's cleansing period. *State v. Gamberella*, 633 So.2d 595, 607 (App. 1 Cir.1993), *writ denied*, 94-200 (La. 6/24/94), 640 So.2d 1341.

The record in this case clearly reveals that the Defendant pled guilty and was sentenced on July 23, 1991 to seven years with the Louisiana Department of Corrections. He was released from prison in 1994, pursuant to parole, for the remainder of his seven-year sentence. His seven-year sentence would have been served by July of 1998. The instant crime was committed in August of 2006, and, as such, was clearly within the ten-year cleansing period. Accordingly, we find no error in the trial court's adjudication of the Defendant as a third felony habitual offender as the State proved that ten years had not expired between the Defendant's discharge from DOC for his second felony conviction and the commission of the instant offense sought to be enhanced.

## DISPOSITION

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**